UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X
OMAR MALCOLM, KARVEN ALCINDOR, ANTHONY          Case No: 20-cv-09641(ALC)
APONTE, SHIRLENE BLAIR, DERYCK CHARLES,
LATIF CORNELIUS, LANAE CURRY, JOSE DEJESUS,
SHAKIYNA ESPINO, ROBERTO FERNANDEZ,
VLAJEMY FRANCOIS, CRYSTAL GARNETT, CHANTEL
GOUVEIA, APRIL HERNEY-KOSAKOWSKI, TAMELLE
HILLIARD, YOLANDA HOLMES, MONIQUE JOHNSON,
KEYSHA LEWIS, CAROLYN MARAJ, HUZIRAN
MOZEB, ZHIHUI PU, DAVID RUDDOCK, MYRLINE
ULYSSES, and BRICE WILLIAMS, individually and on
behalf of all others similarly situated,

                              Plaintiffs,


                -against-

THE CITY OF NEW YORK,

                              Defendant.
-----------------------------------------------------------------------------X

# PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION AND FOR COURT FACILITATION OF NOTICE PURSUANT TO 29 U.S.C. § 216

| | |
|---|---|
| Law Offices of Paul A. Pagano, P.C. | Law Offices of Jason L, Abelove, P.C. |
| *Attorneys for Plaintiffs* | *Attorneys for Plaintiffs* |
| 100 Duffy Ave, Suite 510 | 666 Old Country Road, Suite 303 |
| Hicksville, NY 11801 | Garden City, NY 11530 |
| (917) 589-1479 | (516) 222-7000 |

Law Offices of Yale Pollack, P.C.
66 Split Rock Road
Syosset, New York 11791
(516) 634-6340

Of Counsel:    Paul A. Pagano, Esq.
               Jason Abelove, Esq.
               Yale Pollack, Esq.

1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii
PRELIMINARY STATEMENT ........................................................................................................ 1
ARGUMENT ........................................................................................................................................ 3
I. PLAINTIFFS HAVE PROVIDED FACTUAL SUPPORT DEMONSTRATING THAT THEY ARE SIMILARY SITUATED AND HAVE MORE THAN MET THEIR MODEST BURDEN FOR CONDITIONAL CERTIFICATION ............................................................... 3
II. PLAINTIFFS' PROPOSED NOTICE IS SUFFICIENT BUT THEY NEVERTHELESS CONSENT TO SOME OF THE CHANGES DEFENDANT SEEKS .................................... 10
CONCLUSION .................................................................................................................................. 12

## **TABLE OF AUTHORITIES**

**CASES**

*Adams v. City of N.Y.*, 2019 U.S. Dist. LEXIS 148745 (S.D.N.Y. Aug. 29, 2019) ........................ 5
*Campbell v. City of N.Y.*, 2020 U.S. Dist. LEXIS 94226 (S.D.N.Y. May 29, 2020) ..................... 5
*Cheng Chung Liang v. J.C. Broadway Rest.*, Inc., 2013 U.S. Dist. LEXIS 73976 (S.D.N.Y. May 23, 2013) ................................................................................................................................. 6
*Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638 (S.D.N.Y. 2010). ............................. 6
*Dumitrescu v. Mr. Chow Enters.*, 2008 U.S. Dist. LEXIS 49881 (S.D.N.Y. June 30, 2008) ........ 5
*Foster v. City of N.Y.*, 2017 U.S. Dist. LEXIS 227758 (S.D.N.Y. Sep. 30, 2017) ........................ 9
*Foster v. City of N.Y.*, 2020 U.S. Dist. LEXIS 204588 (S.D.N.Y. Oct. 30, 2020) ........................ 5
*Freeman v. River Manor Corp.*, 2019 U.S. Dist. LEXIS 40599 (E.D.N.Y. Mar. 13, 2019) .......... 7
*Gregory v. Stewart's Shops Corp*., 2016 U.S. Dist. LEXIS 89576 (N.D.N.Y. July 8, 2016) ......... 8
*Hernandez v. City of N.Y.*, 2017 U.S. Dist. LEXIS 102285 (S.D.N.Y. June 29, 2017) ................. 7
*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014) ..................................................... 6
*Khan v. Airport Mgmt. Servs., LLC*, 2011 U.S. Dist. LEXIS 133134 (S.D.N.Y. Nov. 16, 2011).. 6
*Levinson v. Primedia Inc.*, 2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. Nov. 6, 2003) .................... 6
*Martin v. United States*, 130 Fed. Cl. 578 (2017) ...................................................................... 10
*Morales v. Plantworks, Inc.*, 2006 U.S. Dist. LEXIS 4267 (S.D.N.Y. Feb. 1, 2006) .................... 6
*Parker v. City of N.Y.*, 2008 U.S. Dist. LEXIS 38769 (S.D.N.Y. May 13, 2008) ................. passim
*Perry v. City of N.Y.*, 2019 U.S. Dist. LEXIS 40696 (S.D.N.Y. Mar. 13, 2019) ........................... 5
*Romero v. H.B. Auto. Grp., Inc.*, 2012 U.S. Dist. LEXIS 61151 (S.D.N.Y. May 1, 2012) ............ 6
*Trawinski v. KPMG LLP*, 2012 U.S. Dist. LEXIS 183366 (S.D.N.Y. Dec. 21, 2012) .................. 6
*Zaldivar v. JMJ Caterers, Inc.,* 166 F. Supp. 3d 310 (E.D.N.Y. 2016). ...................................... 12

**STATUTES**

29 CFR § 778.106 ........................................................................................................................... 8

**PRELIMINARY STATEMENT**

Plaintiffs'[1] moving papers establish that they have easily met the low bar necessary for conditional certification. The allegations in the FAC coupled with the sworn declarations of Assistant Deputy Wardens Malcolm and Maraj, Captain Francois, and Correction Officers DeJesus and Curry establish that the Plaintiffs and, at least, 100 other employees of the City of New York's Department of Corrections are similarly situated in that they have common job titles (with identical job responsibilities within each job title), they work in the same location (Riker's Island), they have the same time tracking procedures (they all sign time sheets and if they work overtime they fill out additional slips that get put onto tour certification sheets), they have common payroll processors (the Central Time Management Unit, which processes the time sheets/tour certification sheets), they all have a common time keeping program (CityTime), they all have common pay schedules (they are all given pay schedules which show the pay dates over the course of a given year), and they all have worked substantial overtime which the DOC is aware of and for which they have either not been paid at all or were paid late in violation of the prompt payment requirement of the FLSA.

In opposition the DOC argues that the Plaintiffs are not similarly situated in their job duties. In addition to the allegations in the FAC and the Plaintiffs' sworn declarations that establish that the Plaintiffs are in fact similarly situated in their job duties, the *DOC's own submissions establish* that the Plaintiffs are similarly situated in their job duties. In particular, the DOC's memorandum of law ("DOC MOL") links to a job description/collective bargaining agreements which bear out

---

[1] Defined terms in Plaintiffs' moving memorandum of law (Docket Entry ("DE") 48) have the same meaning herein.

that the duties performed within each job title are effectively identical and that duties across job titles are similar.  The DOC also argues that the Captains and ADWs are exempt under the FLSA, an argument which is firmly contested by Plaintiffs, and, even if true, is irrelevant at the first step of certification.  Moreover, the DOC argues that the Plaintiffs have failed to allege a common policy that violates the FLSA.  To the contrary, Plaintiffs have alleged that the DOC has a policy of failing to pay the Plaintiffs and the putative collective members in accordance with the prompt payment requirement of the FLSA (by not paying overtime wages in the same pay period in which regular wages are paid and/or paying overtime wages one or more pay periods late); a policy which has been the subject of approved certification motions.  Relatedly, in opposition to Plaintiffs' motion the DOC mentions another policy that violates the prompt payment requirement of the FLSA (computing overtime on a monthly basis and paying same within six weeks following submission of a monthly report).  Yet still, the DOC argues that its payment management system does not violate the FLSA's prompt payment requirement citing to *Parker v. City of N.Y.*, 2008 U.S. Dist. LEXIS 38769 (S.D.N.Y. May 13, 2008).  As discussed below, the *Parker* decision, which concerns summary judgment rather than a motion for conditional certification, did not pertain to the DOC's current system CityTime, but rather an older and more archaic system.

As a tacit concession that certification is likely to be granted, the DOC argues that the dissemination of an eventual notice to the collective should be limited to First Class Mail and that certain minor tweaks should be made to the notice itself.  Simply put, there is no legal or factual basis to limit dissemination of an eventual notice to First Class mail and Plaintiffs, with limited exception, do not object to the DOC's proposed tweaks.

**ARGUMENT**

**I. PLAINTIFFS HAVE PROVIDED FACTUAL SUPPORT DEMONSTRATING THAT THEY ARE SIMILARY SITUATED AND HAVE MORE THAN MET THEIR MODEST BURDEN FOR CONDITIONAL CERTIFICATION**

As set forth in Plaintiffs' moving memorandum of law ("Moving MOL"), at the first step of the certification process the Plaintiffs need only make a modest factual showing that they are similarly situated to the potential opt-in plaintiffs and that the Plaintiffs and opt-in Plaintiffs were victims of a common policy or practice that violates the FLSA. Moving MOL, p. 7-8.

Plaintiffs have more than met their low burden by, *inter alia*, providing sworn declarations which establish that Plaintiffs, the 100 putative collective members mentioned in the Plaintiffs' declarations, and thousands of other putative collective members are similarly situated in that: (1) they held/hold common job titles (D.E. 26, p. 5-6, ¶ 34-57; Pagano Dec., Exhibit 2, p. 4, ¶ 17; Exhibit 3, p. 4, ¶ 16; Exhibit 4, p. 4, ¶ 15; Exhibit 5, p. 4, ¶ 14; Exhibit 6, p. 4, ¶ 14); (2) the job duties and responsibilities within each job title are effectively identical (Pagano Dec., Exhibit 2, p. 4, ¶ 17; Exhibit 3, p. 4, ¶ 16; Exhibit 4, p. 4, ¶ 15, fn. 2; Exhibit 5, p. 4, ¶ 14; Exhibit 6, p. 4, ¶ 14, fn 2); (3) their work location, Riker's Island, is identical (D.E. 26, p. 7, ¶ 34-57; Pagano Dec., Exhibit 2, p. 4, ¶ 17; Exhibit 3, p. 4, ¶ 16; Exhibit 4, p. 4, ¶ 15; Exhibit 5, p. 4, ¶ 14; Exhibit 6, p. 4, ¶ 14); (4) they track their time in the same way (D.E. 26, p. 7, ¶ 58-62; Pagano Dec., Exhibit 2, p. 2, 3, 4, ¶ 8-12, 17; Exhibit 3, p. 2, 3, 4 ¶ 7-11, 16; Exhibit 4, p. 2, 3, 4, ¶ 6-10, 15; Exhibit 5, p. 2, 3, 4, ¶ 5-9, 14; Exhibit 6, p. 2, 3, 4, ¶ 5-9, 14); (5) all of their time was processed by the CTMU (Pagano Dec., Exhibit 2, p. 2, 4, ¶ 10, 11, 17; Exhibit 3, p. 2, 4, ¶ 9, 10, 16; Exhibit 4, p. 2, 4, ¶ 8, 9, 15; Exhibit 5, p. 2, 4, ¶ 7, 8, 14; Exhibit 6, p. 2, 4, ¶ 7, 8, 14); (6) all of their time was processed by CityTime (Pagano Dec., Exhibit 2, p. 2, 4, ¶ 10, 11, 17; Exhibit 3, p. 2, 4, ¶ 9, 10, 16; Exhibit

4, p. 2, 4, ¶ 8, 9, 15; Exhibit 5, p. 2, 4, ¶ 7, 8, 14; Exhibit 6, p. 2, 4, ¶ 7, 8, 14); (7) <u>they were all supposed to be paid in accordance with the same pay schedules</u> (Pagano Dec., Exhibit 2, p. 2, 3, 4, ¶ 11, 12, 17; Exhibit 3, p. 2, 3, 4, ¶ 10, 11, 16; Exhibit 4, p. 2, 4, ¶ 9, 10, 15; Exhibit 5, p. 2, 4, ¶ 8, 9, 14; Exhibit 6, p. 2, 4, ¶ 8, 9, 14); and (8) <u>they are all subject to the DOC's policy of failing to pay the Plaintiffs in accordance with the prompt payment requirement of the FLSA</u> (Pagano Dec., Exhibit 2, p. 2, 3, 4, ¶ 12, 13, 17; Exhibit 3, p. 2,3, 4, ¶ 11, 12, 16; Exhibit 4, p. 2, 3, 4, ¶ 10, 11, 15; Exhibit 5, p. 2, 3, 4, ¶ 9, 10, 14; Exhibit 6, p. 2, 3, 4, ¶ 9, 10, 14).

In opposition the DOC first argues that the Plaintiffs' duties and responsibilities are not similar to each other or to those of the putative collective members. DOL MOL, p. 4-8. Initially, the DOC has not contested that the duties and responsibilities of the employees *within* each job title (Correction Officers, Captains, and Assistant Deputy Wardens) are effectively identical. Indeed, the information the DOC provides only solidifies the point. For example, the DOC references a common job description for *all* of the Correction Officers as well as a collective bargaining agreement ("CBA") for *all* Correction Officers, a CBA for *all* of the Captains, and a CBA for *all* of the Assistant Deputy Wardens. DOL MOL, p. 6. In light of same, and taking into account the DOC's cited statistics from June 2020, as of that time frame there were 8,129 Correction Officers whose job duties and responsibilities were effectively identical, there were 785 Captains whose job duties and responsibilities were effectively identical, and there were 67 Assistant Deputy Wardens whose job duties and responsibilities were effectively identical. DOL MOL, p. 10.[2] Moreover, on a fundamental level, *inter alia*, the Plaintiffs and putative class

---

[2]https://www1.nyc.gov/assets/doc/downloads/pdf/2020%20DOC%20STAFF%20DEMOGRAPHIC%20REPORT.pdf

members are all responsible for inmates and complete forms and reports. Further, Plaintiffs and the putative class members' job duties are only required to be similar, not identical. *Dumitrescu v. Mr. Chow Enters.*, 2008 U.S. Dist. LEXIS 49881, at *15 (S.D.N.Y. June 30, 2008). Indeed, Courts routinely grant initial certification where different job titles are involved even with different levels of authority. *Perry v. City of N.Y.*, 2019 U.S. Dist. LEXIS 40696, at *24-26 (S.D.N.Y. Mar. 13, 2019)(granting conditional certification for EMTs and Paramedics); *Foster v. City of N.Y.*, 2020 U.S. Dist. LEXIS 204588, at *95 (S.D.N.Y. Oct. 30, 2020)(finding similarly situated Child Protective Specialists and Child Protective Specialist Supervisors Levels One and Two and separately finding similarly situated Job Opportunity Specialists and Associate Job Opportunity Specialists at three divisions within the New York City Human Resources Administration); *Adams v. City of N.Y.*, 2019 U.S. Dist. LEXIS 148745, at *29-30 (S.D.N.Y. Aug. 29, 2019)(denying decertification motion for three different levels of fraud supervisors); *Campbell v. City of N.Y.*, 2020 U.S. Dist. LEXIS 94226, at *5-6 (S.D.N.Y. May 29, 2020)(denying decertification motion for 494 current or former Officers and Sergeants in the New York City Department of Homeless Services). Relatedly, while Plaintiffs firmly believe that all putative collective members are similarly situated, Plaintiffs would not object to having three sub classes consisting of Correction Officers, Captains and ADW's respectively. Finally, in closing on its first argument, that the Plaintiffs' job duties and responsibilities are not similar to those of the people they seek to represent, the DOC cites to a litany of inapposite cases. *See Romero v. H.B. Auto. Grp., Inc.*, 2012 U.S. Dist. LEXIS 61151, at *42 (S.D.N.Y. May 1, 2012)(plaintiff was the only inventory manager ever hired by defendants and she never alleged she had job duties similar to any other employee); *Khan v. Airport Mgmt. Servs., LLC*, 2011 U.S. Dist. LEXIS 133134, at *14-15 (S.D.N.Y. Nov. 16,

2011)(even after five months of preliminary discovery, plaintiff was unable to produce a single other individual interested in participating as a plaintiff in the case); *Morales v. Plantworks, Inc.*, 2006 U.S. Dist. LEXIS 4267, at *5-6 (S.D.N.Y. Feb. 1, 2006)(only an affidavit of an attorney and the exhibits thereto were submitted none of which made reference to any employee other than plaintiffs and which made no allegations of a common policy or plan to deny plaintiffs overtime); *Levinson v. Primedia Inc.*, 2003 U.S. Dist. LEXIS 20010, at *4-5 (S.D.N.Y. Nov. 6, 2003)(while plaintiffs provided factual assertions in support of their claims they failed to make a sufficient showing that the same was true for other potential plaintiffs.)

Second, the DOC argues that conditional certification is inappropriate because the Captains and ADWs are exempt from overtime under the FLSA. However, Plaintiffs and the putative collective members' FLSA exemption statuses are irrelevant to, as here, a first stage, pre-discovery motion for conditional certification. *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 161 (S.D.N.Y. 2014)("the possible existence of exemptions is a merits issue that is not relevant at the conditional certification stage."); *Trawinski v. KPMG LLP*, 2012 U.S. Dist. LEXIS 183366, at *11 (S.D.N.Y. Dec. 21, 2012). Notably, the cases the DOC cites concerning FLSA exemptions actually, at least in part, grant conditional certification. *Cheng Chung Liang v. J.C. Broadway Rest.*, Inc., 2013 U.S. Dist. LEXIS 73976, at *6 (S.D.N.Y. May 23, 2013)(granting Plaintiffs' motion for conditional certification); *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 652 (S.D.N.Y. 2010).

Third, the DOC argues that Plaintiffs have not demonstrated that the DOC has a common policy to violate the prompt payment requirement of the FLSA. However, Plaintiffs have alleged that the DOC has a policy of failing to pay the Plaintiffs and putative collective members in

accordance with the prompt payment requirement of the FLSA (by not paying overtime wages in the same pay period in which regular wages are paid and/or paying overtime wages one or more pay periods late); a policy that has been the subject of approved certification motions. (Pagano Dec., Exhibit 2, p. 3, ¶ 13; Exhibit 3, p. 3, ¶ 12; Exhibit 4, p. 3, ¶ 11; Exhibit 5, p. 2-3, ¶ 10; Exhibit 6, p. 2-3, 10; D.E. 26, p. 7, ¶ 63-66). *See e.g. Hernandez v. City of N.Y.*, 2017 U.S. Dist. LEXIS 102285, at *20 (S.D.N.Y. June 29, 2017)(granting conditional certification where the "final policy Plaintiffs identif[ied] is the late payment of overtime compensation" and where it was alleged that overtime was not paid until more than one additional pay period had passed).[3] In addition to the foregoing policy, the DOC also states that it has a policy of computing overtime on a monthly basis and then paying overtime within six weeks following the submission of a monthly report. DOC MOL, p. 8. Such a policy violates the prompt payment requirement of the FLSA in that, *inter alia*, overtime is not paid on the regular pay day for the period in which the pertinent workweek ends, the overtime pay can be calculated during the regular pay period and notwithstanding that is still not paid as soon as practicable after the regular pay period, and overtime payment is delayed longer than is reasonably necessary for the DOC to compute and arrange for the payment of overtime and is delayed beyond the next payday after the overtime computation can be made. 29 CFR § 778.106. The DOC also claims that Plaintiffs have failed to set forth evidence of a *de facto* policy due to the absence of comprehensive statistical analyses or

---

[3] The DOC seems to suggest that the payment of overtime should be governed by the subject CBAs, however the CBAs do not supersede the FLSA. *See e.g. Freeman v. River Manor Corp.*, 2019 U.S. Dist. LEXIS 40599, at *17 n.7 (E.D.N.Y. Mar. 13, 2019). The DOC also argues that Plaintiffs haven't alleged that the DOC's failure to pay overtime timely is willful, but such argument is betrayed by the plain language of the FAC. *See e.g.*. D.E. 26, p. 49, ¶ 84-87.

anecdotal evidence that reaches a certain critical mass citing to *Gregory v. Stewart's Shops Corp.*, 2016 U.S. Dist. LEXIS 89576, at *39-40 (N.D.N.Y. July 8, 2016). Such argument appears applicable to a Rule 23 motion rather than a conditional certification motion, but nevertheless the DOC's policies regarding failing to comply with the prompt payment requirement of the FLSA are already supported by the widespread anecdotal evidence of over 100 Correction Officers, Captains, and Assistant Deputy Wardens as well as the DOC's own admissions regarding its policy of computing overtime on a monthly basis and then paying six weeks later. DOC MOL, p. 8. Based on the above-cited statistical data provided by the DOC it is likely that there are thousands of employees with delayed overtime claims.

Fourth, the DOC argues that its payment management system and the timing of its payments have already been found by the Courts to not be violative of the FLSA's prompt payment requirement in *Parker v. City of N.Y.*, 2008 U.S. Dist. LEXIS 38769 (S.D.N.Y. May 13, 2008). The DOC's argument is premature and incorrect. Initially, the motion before the Court is one for conditional certification whereas *Parker* concerned a motion for summary judgment. Id. at * 39. As the Court is aware, the standards for conditional certification and a motion for summary judgment are diametrically opposed with the former being a low bar and the latter requiring the elimination of any possible question of fact.

Further, *Parker* is factually inapposite to the instant matter as it concerns, *inter alia*, a different payroll system and a different payroll processing methodology (from both a time required and process standpoint). *Parker* concerned former and current employees of the City of New York's Department of Juvenile Justice who were paid on a bi-weekly basis and who, due to the fact that time records for the second week of each bi-weekly pay period were not provided to

the timekeepers until *after* certain calculations were run, did not receive overtime for the second week of each bi-weekly pay period until the paycheck after which they received the regular pay for the given bi-weekly pay period. Id at *34-37. Under such circumstances, the plaintiffs alleged that defendants violated the FLSA's prompt payment requirement because plaintiffs did not receive their second week's overtime pay in the same paycheck as their first week's overtime pay and regular pay. Id. at *5. Ultimately, on the specific facts of the case, the Court granted defendants summary judgment as the defendants had demonstrated by a preponderance of the evidence that the overtime worked in week 2 of a given period could not be included in the paycheck covering that period. Id. at *39. Here, Plaintiffs and the putative collective members are also paid on a bi-weekly basis, however everything else is different. Initially, since approximately 2009, the DOC has been utilizing a new and more efficient program known as CityTime. *See e.g. Foster v. City of N.Y.*, 2017 U.S. Dist. LEXIS 227758, at *60 (S.D.N.Y. Sep. 30, 2017)(discussing defendant NYC's use of CityTime since 2009). Unlike in *Parker* where time was reported and processed on a weekly basis, time is now tracked and reported on a *daily basis*. *See e.g.* D.E. 26, p. 7, ¶ 60-62. Further, the window after the end of a given bi-weekly period in which payment is made is now longer. In *Parker*, a payroll check was issued *6 days* after the end of the bi-weekly period[4] whereas in 2020 for example a payroll check was issued *13 days* after the end of the bi-weekly period. Pagano Dec., Exhibit 2, Sub-Exhibit 1. Moreover, in the instant case Plaintiffs allege that the DOC violated the prompt payment requirement of the FLSA by failing to pay them and the putative collective members their overtime in the same paycheck as they receive their regular pay and/or delaying the payment of overtime

---

[4] *Parker v. City of N.Y.*, 2008 U.S. Dist. LEXIS 38769, at *35 (S.D.N.Y. May 13, 2008).

compensation for one pay period or more (not as alleged in *Parker* that week 2 overtime was not paid in the same paycheck as regular wages). In light of all of the foregoing, the holding of *Parker* is irrelevant to the instant matter and Plaintiffs are confident that when this matter is ripe for summary judgment adjudication the DOC's actions will be found to be violative of the prompt payment requirement of the FLSA.

In closing on their arguments regarding why certification should be denied, the DOC raises the issue of the pandemic (as it has done in numerous other filings). As an initial matter, the DOC has failed to cite to a single case suggesting that emergency excuses its overtime payment obligations and indeed the opposite is true. *See e.g. Martin v. United States*, 130 Fed. Cl. 578, 584-88 (2017). Moreover, the DOC's argument is in bad faith. The Plaintiffs and the putative collective members are the ones who, even before the pandemic, were literally putting their lives on the line every day. They do so now with increased risks to their health and personal safety and with fewer individuals to assist them due to attrition all while working longer and longer hours and more overtime. The DOC should not, on top of that, be able to use the very emergency state Plaintiffs and the putative collective members are combatting to justify failing to pay Plaintiffs and the putative collective members the overtime and liquidated damages they are entitled to.

## II. PLAINTIFFS' PROPOSED NOTICE IS SUFFICIENT BUT THEY NEVERTHELESS CONSENT TO SOME OF THE CHANGES DEFENDANT SEEKS

In Plaintiffs' moving papers they established that it is appropriate for the Court to order the DOC to produce a list, in electronic and importable format, of all people in the collective, including the person's name, physical address, private and work email addresses, telephone number, work location, dates of employment, titles held during the relevant time period and

dates such titles were held during the relevant time period in order to facilitate notice consistent with the methods of service approved by courts in this Circuit. Moving MOL, p. 15. Plaintiffs also established that it was proper to give notice by first class mail and email. Moving MOL, p. 15-16.

At no point in the DOC's opposition papers does it address any of the cases Plaintiffs' cited in support of the foregoing. Instead, without legal authority, the DOC argues that the proposed notice should only be sent by first class mail and that Plaintiffs should not be given the phone numbers and e-mail addresses of the collective members. It is unrefuted that distribution of notices by email is approved by Courts, appropriate, and consistent with modern methods of communication.[5] Moreover, the provision of phone numbers and emails are likewise approved by Courts, appropriate, will facilitate communication with the collective members, and will help fulfill the remedial purposes of the FLSA.

The DOC also seeks to add to the notice that the putative collective members may retain their own counsel and to add the DOC's counsel's information. Plaintiffs have no issue with putting a section in the notice advising that collective members have the right to hire their own counsel. Moreover, Plaintiffs have no issue with putting in the DOC's counsel's name and address, but believe that it would be confusing to the collective to have the DOC's counsel's phone number or email address in the notice as some collective members may be confused into believing that the DOC's counsel is their counsel and/or that they should seek advice regarding the litigation from the DOC's counsel.

---

[5] To the extent the DOC does not have personal email addresses, notices can be distributed by work email address to all existing employees and by first class mail to both existing and former employees.

Finally, it must be noted that the DOC did not challenge Plaintiffs' assertion and supporting case law (in their moving papers) that notice should be given to employees who have worked for the DOC for the three years preceding the filing of the complaint and up to the date of the notice.

## CONCLUSION

Plaintiffs' instant motion for conditional collective certification and court-facilitated notice should be granted in its entirety.

| | |
|---|---|
| Dated: February 21, 2022<br>Hicksville, New York | Law Offices of Paul A. Pagano, P.C.<br><br>By: _____<br>Paul A. Pagano, Esq.<br>*Attorneys for Plaintiffs*<br>100 Duffy Ave, Suite 510<br>Hicksville, NY 11801<br>(917) 589-1479 |
| Law Offices of Yale Pollack, P.C.<br><br>By: _____<br>  Yale Pollack, Esq.<br>  *Attorneys for Plaintiffs*<br>  66 Split Rock Road<br>  Syosset, New York 11791<br>  (516) 634-6340 | Law Offices of Jason L, Abelove, P.C.<br><br>By: _____<br>Jason L. Abelove, Esq.<br>*Attorneys for Plaintiffs*<br>666 Old Country Road, Suite 303<br>Garden City, NY 11530<br>(516) 222-7000 |