Confidential<br>and Proprietary<br>6/18/2024

| | |
|---|---|
| Case Name: | **Malcom v The City of New York** |
| Date: | April 10, 2024 |
| Estimate Valid Through: | July 9, 2024 |
| Firm Submitted to: | Law Office of Paul Pagano |
| Firm Contact: | Paul Pagano |

## Summary Estimate: Fees and Expenses

**Fees**

| | |
|---|---:|
| Toll Free Phone and Email Support | $1,400 |
| Distribution Services | $11,560 |
| Tax Reporting Regarding Payments | $1,051 |
| **Total Fees** | **$14,011** |

**Expenses**

| | |
|---|---:|
| Postage | $5,700 |
| Printing | $9,136 |
| Miscellaneous | $1,052 |
| **Total Expenses** | **$15,888** |
| **Total Fees and Expenses** | **$29,899** |



Proprietary and Confidential
Page 1

## Schedule A

### Projected Settlement Administration Fees and Expenses

| Activity | Estimated Volume | Hours or Units | Rate | Estimated Total |
|---|---|---|---|---|
| **Toll Free Phone and Email Support** | | | | |
| Initial Configuration of Call Center | | | | $500 |
| Call Center Agent Support (Calls and Correspondence) | 9 | Months | $100 | $900 |
| **Total Projected Fees - Toll Free Phone and Email Support** | | | | **$1,400** |
| **Distribution Services** | | | | |
| *Liquidated Damages* | | | | |
| Project Management: Distribution of Settlement Proceeds | 14 | Hours | $150 | $2,100 |
| Information Systems: Check Programming and Calculation of Final Distribution Amounts; Ongoing Engagement Support | 4 | Hours | $150 | $600 |
| Graphic Design: Set Up, Format, and Proof the Notice Documents | 1 | Hour | $150 | $150 |
| *Number of Employees* | | 2,600 | | |
| *  Current Employees* | 70% | 1,820 | | |
| *  Former Employees* | 30% | 780 | | |
| Print and Mail Settlement Checks | 2,600 | Checks | $1.00 | $2,600 |
| First Class Postage | 2,600 | Checks | $0.68 | $1,768 |
| *Projected Results of Distribution:* | | | | |
| *  Checks Returned As Undeliverable* | *8%* | *208* | | |
| *  Checks Returned With Address Corrections* | *1%* | *26* | | |
| Receive and Log In Checks Returned as Undeliverable Mail and Address Corrections | 8 | Hours | $55 | $440 |
| First Class Postage | 26 | Checks | $0.68 | $18 |
| Location Services | | | | |
|   Research New Addresses for Checks Returned as Undeliverable | 208 | Searches | $0.25 | $52 |
|   Remail Checks To Updated Addresses | 80%   166 | Checks | $1.00 | $166 |
|   First Class Postage | 166 | Checks | $0.68 | $113 |
| Post Distribution Activities: Employee Queries and Check Reissues | 13 | Hours | $55 | $715 |
| Post Distribution Activities: Account Reconciliation and Reporting | 3 | Hours | $150 | $450 |

6/18/2024

Signature/Initials: _____



Proprietary and Confidential
Page 2

Schedule A

Projected Settlement Administration Fees and Expenses

| Activity | | Estimated Volume | Hours or Units | Rate | Estimated Total |
|---|---|---|---|---|---|
| ***Back Pay for Former Employees*** | | | | | |
| Project Management: Distribution of Settlement Proceeds | | 8 | Hours | $150 | $1,200 |
| Information Systems: Ongoing Engagement Support | | 4 | Hours | $150 | $600 |
| *Number of Employees* | | 2,600 | | | |
| *Current Employees* | 70% | 1,820 | | | |
| *Former Employees* | 30% | 780 | | | |
| Document Center Supervision of ad hoc Mailings | | 16 | Hours | $55 | $880 |
| Print and Mail Settlement Checks | | 780 | Checks | $2.00 | $1,560 |
| First Class Postage | | 780 | Checks | $0.68 | $530 |
| Post Distribution Activities: Employee Queries and Check Reissues | | 4 | Hours | $55 | $220 |
| Post Distribution Activities: Account Reconciliation and Reporting | | 2 | Hours | $150 | $300 |
| ***Liquidated Damages (Second Distribution)*** | | | | | |
| Project Management: Distribution of Settlement Proceeds | | 12 | Hours | $150 | $1,800 |
| Information Systems: Check Programming and Calculation of Final Distribution Amounts; Ongoing Engagement Support | | 4 | Hours | $150 | $600 |
| Print and Mail Settlement Checks | 85% | 2,210 | Checks | $1.00 | $2,210 |
| First Class Postage | | 2,210 | Checks | $0.68 | $1,503 |
| Post Distribution Activities: Employee Queries and Check Reissues | | 11 | Hours | $55 | $605 |
| Post Distribution Activities: Account Reconciliation and Reporting | | 2 | Hours | $150 | $300 |
| Distribution of Residual Funds | | 4 | Hours | $150 | $600 |
| Tax Reporting: Qualified Settlement Fund | | | | | |
| Annual State and Federal Tax Return | | 2 | Tax Returns | $500 | $1,000 |
| **Total Projected Fees - Distribution Services** | | | | | **$23,080** |
| **Tax Reporting Regarding Payments** | | | | | |
| Project Management: Tax Reporting | | 2 | Hours | $150 | $300 |
| Information Systems: Tax Reporting and Ongoing Engagement Support | | 2 | Hours | $150 | $300 |
| Tax Reporting: Distribution | | | | | |

6/18/2024

Signature/Initials: _____



Proprietary and Confidential
Page 3

Schedule A

Projected Settlement Administration Fees and Expenses

| Activity | Estimated Volume | | Hours or Units | Rate | Estimated Total |
|---|---|---|---|---|---|
| TIN Matching - IRS Verification of SSNs | | 2,210 | TINs | $0.10 | $221 |
| Letters and W-9 Forms to Class Members With Mis-Matched TINs | 5% | 111 | Letters | $1.00 | $111 |
| First Class Postage | | 111 | Letters | $0.68 | $75 |
| Process W-9 forms | 20% | 22 | Forms | $2.00 | $44 |
| Class Members Receiving 1099 Form | 100% | 2,600 | Class Members | | |
| Print and Mail 1099 Forms (If Required/Payments Exceed Reporting Threshold) | 100% | 2,600 | 1099 Forms | $1.00 | $2,600 |
| First Class Postage | | 2,600 | 1099 Forms | $0.68 | $1,768 |
| **Total Projected Fees - Tax Reporting Regarding Payments** | | | | | **$5,419** |
| **Total Projected Fees and Expenses, All Phases** | | | | | **$29,899** |

6/18/2024

Signature/Initials: _____



**TERMS AND CONDITIONS**

All services to be provided by Analytics Consulting LLC ("Analytics"), including services provided to Client as set forth in the attached Proposal, are subject to the following Terms and Conditions. For purposes hereof, the Proposal and the Terms and Conditions are hereinafter referred to as the "Agreement

1. **SERVICES**. Subject to the terms and conditions herein, the Client agrees to retain Analytics to provide services (the "Services") necessary to perform the tasks specified in the foregoing Proposal (the "Proposal"), and Analytics agrees to provide such Services for the Client subject to these terms and conditions. The parties agree and understand that none of the Services constitute legal advice.

2. **TERM**. This Agreement between the parties shall be effective on the date that the Client accepts the Proposal by (a) signing the Proposal, (b) sending a confirmation to Analytics by electronic mail that it has reviewed and agrees to the Proposal and agrees to engage Analytics on the terms and conditions of the Proposal, or (c) by acknowledging by letter or electronic mail that Analytics was appointed by the applicable court to provide the Services and that such appointment and the Services are subject to the terms and conditions of the Proposal, and, unless earlier terminated in accordance with Section 3 hereof, will remain in effect until completion of the Services.

3. **TERMINATION**. The Client may terminate the Services to be provided under this Agreement at any time on at least thirty (30) calendar days' prior written notice to Analytics. Analytics may terminate this Agreement (a) with ten (10) calendar days' prior written notice if the Client is not current in payment of Fees and/or Reimbursable Expenses, or (b) in any event, upon at least three (3) months' prior written notice to the Client. Termination of this Agreement for any reason or no reason at all shall in no event relieve the Client from tendering full and timely payment to Analytics for work performed or expenses incurred prior to the date of termination.

4. **CHARGES FOR SERVICE**. The Client agrees to pay Analytics its fees as outlined in this Proposal (the "Fees") for the Services provided by Analytics. The Client acknowledges that the rates (both unit prices and hourly rates) contained therein were negotiated at arm's length and may vary depending on the circumstances of each case. The Client acknowledges that the fees quoted therein (and any fees quoted in any proposal for additional services executed by the parties) are estimates based on information provided to Analytics by the Client and actual fees and charges may vary depending on the circumstances and length of the case. The Client shall be responsible for payment of all state and local sales and use taxes, if any, levied upon the charges payable by the Client hereunder. Analytics' prices are inclusive of commission and other charges and are generally adjusted periodically to reflect changes in the business and economic environment. Analytics reserves the right to reasonably increase its prices, charges and rates annually. If any such increase exceeds 10%, Analytics will give thirty (30) days written notice to Client. The Client agrees that, unless otherwise agreed to in writing, the Fees and Reimbursable Expenses outlined in this Proposal shall not be subjected to court approval. Fees and expenses will be the client's responsibility to pay regardless of court approval.

5. **EXPENSES**. In addition to the compensation set forth in Section 4, the Client shall reimburse Analytics for all out-of-pocket expenses reasonably incurred by Analytics in connection with the performance of the Services ("<u>Reimbursable Expenses</u>"). The Reimbursable Expenses may include, but are not limited to, postage, banking fees, brokerage fees, costs of messenger and delivery service, travel, filing fees, and other similar expenses. The Client acknowledges and understands that Analytics may derive financial benefits from financial institutions resulting from settlement funds and other moneys on deposit or invested with them. These benefits include, for example, discounts provided on certain banking services and service fees. In some cases, Analytics may also receive a rebate at the end of a year from a vendor. The Client hereby waives any claim or right to any such discounts or rebates received by Analytics**.**

6. **PAYMENT OF CHARGES**. Analytics shall bill the Client for its Fees and Reimbursable Expenses on a regular basis and Client agrees that the amount invoiced is due and payable upon receipt. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Client further agrees to pay a late charge (the "Service Charge"), calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute in the invoice amount, Client shall give written notice to Analytics within twenty (20) days of receipt of the invoice by Client  Decisions of the court and actions of the parties, including but not limited to objection, rejection, disapproval or withdrawal of a settlement, do not affect the Client's liability to Analytics for payment of the Fees and Reimbursable Expenses. Services are not provided on a contingency fee basis. Notwithstanding the foregoing, where total charges are expected to exceed $10,000 in any single month, Analytics may require advance payment from Client due and payable upon demand and prior to the performance of services. Unless otherwise agreed to in writing, the costs of print notice and media publication (including commissions) as well as for certain expenses, such as postage, must be paid at least ten (10) days in advance of those expenses being incurred.

7. **DEFERRAL OF PAYMENT**. Analytics may, at its discretion and upon the written request of the Client, defer payment of Fees and Reimbursable Expenses for the requested length of time. This deferral is subjected to a service charge of 1% per month or, if less, the highest rate permitted by law, and may last no longer than twelve (12) months. Failure of the Client to fully pay the deferred Fees and Reimbursable Expenses after twelve (12) months shall constitute a material breach of this Agreement, and, unless otherwise agreed upon in writing, Analytics may take legal actions to collect any amount unpaid. Analytics approval of any deferral shall not constitute or be construed as future approval of future deferral requests.

8. **FURTHER ASSURANCES**. Client agrees that it will use its best efforts to include provisions reasonably acceptable to Analytics in any relevant court order, settlement agreement or similar document that provide for the payment of Analytics' fees and expenses hereunder. No agreement to which Analytics is not a party shall reduce or limit the full and prompt payment of Analytics' fees and expenses as set forth herein and in the Proposal.

9. **INDEPENDENT CONTRACTOR**. Analytics is an independent contractor and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of the Services or these Terms and Conditions.

10. **CONFIDENTIALITY**. Each of Analytics and Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services; provided. Should Analytics ever be notified of any judicial

*April 1, 2019*

order or other proceedings in which a third party seeks to obtain access to the confidential data created by or for the Client, Analytics will promptly notify the Client, unless prohibited by applicable law. The Client shall have the option to (i) provide legal representation at the Client's expense to avoid such access, or (ii) promptly reimburse Analytics for any of its costs, including attorneys' fees reasonably incurred in avoiding, attempting to avoid, or providing such access and not paid by the entity seeking the data. If Analytics is required, pursuant to a court order, to produce documents, disclose data, or otherwise act in contravention of the obligations imposed by this Agreement or otherwise, with respect to maintaining the confidentiality, proprietary nature and secrecy of the produced documents or disclosed data, Analytics will not be liable for breach of said obligation. These provisions shall survive termination of Services.

11.   **STANDARD BANKING PROCEDURES**. In accordance with Analytics' standard banking procedures, Analytics will establish a demand deposit checking account (i.e. non-interest bearing) for funds received related to a distribution, unless directed otherwise in writing by the parties or unless the settlement agreement stipulates otherwise. When directed to invest funds in an interest bearing or investment account, Analytics intends to invest all funds in U.S. government backed securities, unless directed by the Client in writing or the settlement agreement or distribution plan to invest in other types of securities; however, even in cases where funds are temporarily placed in interest bearing or investment accounts, funds will eventually be migrated to a demand deposit checking account prior to a fund distribution.

12.   **RIGHTS IN DATA**. Analytics does not convey nor does the Client obtain any right in the programs, system data, or materials utilized or provided by Analytics in the ordinary course of business in the performance of this Agreement.

13.   **DOCUMENT RETENTION**. Unless directed otherwise in writing by Client, Analytics will destroy undeliverable notice mail on the effective date of the settlement or the date that the disposition of the case is no longer subject to appeal or review, whichever is later. Analytics will maintain claim forms and other correspondence for one year after final distribution of funds or benefits, or until the date that the disposition of the case is no longer subject to appeal or review, whichever is later. Analytics will retain all bank and tax documents for such period of time as it determines is required to maintain compliance with various federal and state requirements. This provision shall not pertain to routine data back-ups nor shall it adversely affect Analytics' right to retain copies of materials it deems necessary to comply with applicable laws, corporate retention policies, or audit requirements.

14.   **LIMITATIONS OF LIABILITY AND INDEMNIFICATION**. Client shall indemnify and hold Analytics, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to Analytics' performance of Services. Such indemnification shall exclude Losses resulting from Analytics' gross negligence or willful misconduct. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. Client shall notify Analytics in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that Client becomes aware of with respect to the Services provided by Analytics. Except as provided herein, Analytics' liability to Client or any person making a claim through or under Client or in connection with Services for any Losses of any kind, even if Analytics has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of Analytics, shall be limited to the total amount billed or billable for the portion of the particular work which gave rise to the alleged Loss. In no event shall Analytics' liability for any Losses, whether direct or indirect, arising out of the Services exceed the total amount billed to Client and actually paid to Analytics for the Services. In no event shall Analytics be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the Services. Except as expressly set forth herein, Analytics makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity. The provisions of this Section 13 shall survive termination of Services.

15.   **NOTICE**. Any notice required or permitted hereunder shall be in writing and shall be delivered personally, by, or sent by registered mail, postage prepaid, or overnight courier service to the responsible officer or principal of Analytics or the Client, as applicable, and shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in United States mail, or, if sent by courier, one business day after delivery to such courier service.

16.   **FORCE MAJEURE**. To the extent performance by Analytics of any of its obligations hereunder is substantially prevented by reason of any act of God or by reason of any other matter beyond Analytics' reasonable control, then such performance shall be excused and this Agreement, at Analytics' option, be deemed suspended during the continuation of such condition and for a reasonable time thereafter.

17.   **NONWAIVER OF RIGHTS**. No failure or delay on the part of a party in exercising any right hereunder will operate as a waiver of, or impair, any such right. No single or partial exercise of any such right will preclude any other or further exercise thereof or the exercise of any other right. No waiver of any such right will be effective unless given in a signed writing.

18.   **GOVERNING LAW; JURISDICTION**. This Agreement will be governed by and construed in accordance with the laws of the State of Minnesota (without reference to its conflict of laws provisions). The parties hereto irrevocably and unconditionally submit to the jurisdiction of the courts of the State of Minnesota, County of Hennepin, or, if it has or can acquire jurisdiction, in the United States District Court – District of Minnesota for purposes of any suit, action or proceeding to enforce any provision of, or based on any right arising out of, this Agreement. The parties hereto hereby irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding in such Court.

19.   **SURVIVAL**. All accrued payment obligations hereunder, any remedies for breach of this Agreement, this Section and the following Sections will survive any expiration or termination of this Agreement: Section 10, 12, 13, 17, and 18.

20.   **ENTIRE AGREEMENT**. These Terms and Conditions and the Proposal embody the entire agreement between the parties with respect to the subject matter hereof, and cancels and supersedes all prior negotiations, representations, and agreements related thereto, either written or oral, except to the extent they are expressly incorporated herein. No changes in, additions to, or waivers of, the Terms and Conditions set forth herein will be binding upon any Party, unless approved in writing by such Party's authorized representative.

*April 1, 2019*