

Paul A. Pagano, Esq.
Paul@LawOfficePaulPagano.com
(917)589-1479

Law Office of Paul A. Pagano, P.C.

July 19, 2024

**VIA ECF**
The Honorable Andrew L. Carter, Jr., U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

      Re:    *Malcolm v. The City of New York*
              20-cv-09641(ALC)

Dear Judge Carter:

      This joint letter brief is submitted by the parties in response to the Court's July 16, 2024, Order directing the parties to explain why a one step-approval process is appropriate for a FLSA collective action, as opposed to preliminary approval and then final approval and, in doing so, to address *Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271 (E.D.N.Y. 2020). Docket Entry 170.

<h3 align="center">Pertinent Procedural History</h3>

      Initially, every single one of the 24 named Plaintiffs in this matter submitted a "Consent to Join Collective Action Form" in which they explicitly provided that they "**hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.**"  Docket Entries 1 (p. 17-28), 9-19, 21.  Moreover, on September 30, 2022, Your Honor granted Plaintiffs' motion for conditional certification noting that the named Plaintiffs and potential opt-in plaintiffs were all similarly situated.  Thereafter, notice was sent to over 12,000 potential opt-ins which set forth the particulars of this litigation in painstaking detail and advised them of their options. Subsequently, approximately 2,600 opt-in plaintiffs executed "Consent to Become a Party Plaintiff" forms in which they explicitly provided, in pertinent part, that "**I hereby further authorize and designate the named plaintiffs to act on my behalf concerning the litigation.** I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable. **I further agree to be bound by any settlement of this action**. I understand that reasonable costs expended by the Firms on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firms will petition the Court to award them attorneys fees from any settlement or judgment in the amount of the greater of: (1) their 'lodestar' amount, calculated by multiplying their reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount." Docket Entries 96-132,135.  Additionally, lead Plaintiff Malcolm, who attended the mediation which led to the settlement agreement, is a signatory to the settlement agreement. Docket Entry 168(3), p. 15. Moreover, as set forth in the declaration of Plaintiffs' counsel Jason Abelove, an email was sent to all opt-in Plaintiffs for whom we have an email address advising them of the key settlement terms, the response to which has been overwhelmingly positive.  Docket Entries 168(2), p. 8, fn 1 and 168(6).  Likewise, the named Plaintiffs have been kept informed of the settlement, have responded positively, and 16 of them have submitted declarations in support of the settlement.



Paul A. Pagano, Esq.
Paul@LawOfficePaulPagano.com
(917)589-1479

Law Office of Paul A. Pagano, P.C.

## <u>Legal Analysis</u>

Given the foregoing, a one-step approval procedure is appropriate.  Indeed, *Marichal v Attending Home Care Servs., LLC*, 432 F Supp 3d 271 (EDNY 2020) supports as much.  There, the Court was primarily concerned with whether the handful of opt-in plaintiffs consented to the settlement, which they had not.  In discussing the consent of opt-in plaintiffs, the Court stated "Understanding that parties may wish to resolve all FLSA claims together and aware of the practical difficulties of dealing with a large number of opt-in plaintiffs, courts approve different procedural mechanisms to facilitate opt-in plaintiffs' consent to a settlement."  *Marichal*, 432 F. Supp 3d. at 280.  The Court then went on to clarify that "**In FLSA cases, opt-in class members often authorize class counsel or the named plaintiff to settle the case for them, and courts have approved such *explicit* authorizations.**"  Id. (emphasis added).  Moreover, in a footnote, the Court provided that a single-step approval process under *Cheeks* would be appropriate if, *inter alia*, the Court had a declaration indicating that the opt-in plaintiffs consented to the agreement.  *Marichal*, 432 F. Supp 3d at 282 fn 4.  Here, we have a large number of opt-in plaintiffs (approximately 2,600) as well as **both** explicit authorizations from all Settlement Plaintiffs and a declaration from Plaintiffs' counsel confirming that Settlement Plaintiffs were advised of the pertinent settlement terms by email and the reaction was positive.  The parties submit that given the foregoing circumstances *Marichal* supports a one-step approval process.

Indeed, Courts routinely utilize one-step approval procedures.  For example, in *Weston v TechSol, LLC,* 2018 US Dist LEXIS 166574, at *28 (EDNY Sep. 26, 2018) the Court granted a motion for settlement approval and attorneys' fees as well as simultaneously authorizing distribution to the settlement collective where the opt-in plaintiffs executed a similar notice to the one in this matter. **Indeed, one-step approval processes are customarily utilized in large cases in this District where the City is the defendant**.  Plaintiffs are aware of eight cases in this District where a collective action for late and/or unpaid overtime against the City was settled via a one-step approval process with equivalent or less authority from the plaintiffs than at bar with very similar settlement agreements to the one at bar.  In *Feiner et. al. v. City of New York,* docket number 16-cv-08675, the Court used a one-step approval process for 908 plaintiffs and a similar settlement agreement.  *See* Docket Entries 85, 85(1) and 87.  In *Hinds et. al. v. City of New York*, docket number 23-cv-00889, the Court used a one-step approval process for 892 plaintiffs and a similar settlement agreement.  *See* Docket Entries 69, 69(1), and dated June 05, 2024.  Yet still, in *Worley et. al. v. City of New York et. al.*, docket number 17-cv-04337, the Court used a one-step approval process for 3,880 plaintiffs and a similar settlement agreement. *See* Docket Entries 217, 217(1), and 230.  In *Monique Murray, et al. v. City of New York*, docket number 16-cv-08072, the Court ***twice*** used a one-step approval process for approximately 483 plaintiffs in connection with a bi-furcated settlement with each settlement agreement being similar to the one at bar.  *See* Docket Entries 198, 198(1), 202, 226, 226(1), 228.  In *Foster, et. al. v. City of New York*, docket number 14-cv-4142, the Court used a one-step approval process for 1,199 plaintiffs and a similar settlement agreement, approving said agreement four business days after its submission.  *See* Docket Entries 241, 241(1), and 242.  *Nell, et al. v. City of New York*, docket number 19-cv-6702, is similar to the matter at bar.  There, employees of the Department of Corrections, as here, who used CityTime for their time keeping, as here, made similar claims as here.  There, the Court, used a one-step approval process for a similar

2

Paul A. Pagano, Esq.
Paul@LawOfficePaulPagano.com
(917)589-1479

settlement agreement granting plaintiffs' application two business days after its submission. *See* Docket Entries 125, 125(1), and 126. Further, in *Casis, et al., v. City of New York*, docket number 22-cv-01926, the Court used a one-step approval process for 173 plaintiffs approving a settlement agreement similar to the one at bar the day after it was filed. *See* Docket Entries 53, 53(1), and 54. Finally, but likely not exhaustively, in *Campbell et al. v. City of New York*, docket number 16-cv-8719, the Court utilized a one-step approval process for 460 plaintiffs and a very similar settlement agreement. *See* Docket Entries 183, 183(1), 186.

**Practical Considerations**

In addition to the fact that one-step approval is appropriate and routinely used in similar cases in this District, two-step approval would be detrimental to the parties for several reasons. First, the anticipated administrative cost of this settlement is currently $30,000. Depending on the scope of any additional notice the Court envisions, that cost could be nearly doubled to $60,000. The additional $30,000 would be taken out of the total Gross Sum distributable to the Settlement Plaintiffs. Second, the Gross Sum was arrived at based on the existing number of Settlement Plaintiffs. If the Court required each of the approximately 2,600 collective members to give consent again, even though they have already done so, it is likely that some of the Settlement Plaintiffs would fail to do so for various innocuous reasons (e.g., change of address resulting in not receiving notice, forgetting to return it, etc.) even though they want to participate in the settlement. Not only would this result in some current Settlement Plaintiffs not getting an award, it would also change the economy of scale for the City who entered into the settlement based on obtaining 2,600 releases. Likewise, if the Court envisions sending notice to the over 12,000 potential collective members and letting them all potentially opt-in, to the extent more than the current Settlement Plaintiffs opted-in, the current Settlement Plaintiffs' awards would be unfairly diluted. Notably, those who are not currently Settlement Plaintiffs will retain their right to sue the Defendant for violations of the FLSA if they so choose. Third, but not exhaustively, it would unnecessarily delay the dissemination of awards to the Settlement Plaintiffs.

**Conclusion**

For all of the reasons set forth in Plaintiffs' unopposed memorandum of law (Docket Entry 168(1)), the parties believe that the proposed settlement is fair and in the best interest of all parties and that the proposed approval methodology is appropriate. Should the Court have any additional questions or concerns the parties are more than happy to have a conference call with the Court to address same.

Respectfully submitted,
Law Office of Paul A. Pagano, P.C.

By: *Paul Pagano*

Paul A. Pagano, Esq.
*Attorneys for Plaintiffs*
100 Duffy Street, Suite 510
Hicksville, NY 11801
(917) 589-1479

cc: All Counsel of Record (VIA ECF)