Law Offices of
# Jason L. Abelove, P.C.
666 Old Country Road
Suite 303
Garden City, New York 11530

Telephone: 516-222-7000  
E-mail: jason@jasonabelove.com

Facsimile: 516-542-2001  
www.jasonabelove.com

July 30, 2024

**VIA ECF**
The Honorable Andrew L. Carter, Jr., U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

  Re: *Malcolm v. The City of New York*
     20-cv-09641(ALC)

Dear Judge Carter:

  This letter is submitted on behalf of the Law Offices of Jason L. Abelove, P.C. and the Law Office of Paul A. Pagano, P.C. in response to the Court's July 26, 2024 order directing a response to the July 25, 2024 letter of the Moser Law Firm.

  Mr. Moser's actions, including his July 15th and July 25th letters, are the epitome of bad faith. For context, the instant litigation was started when Mr. Pagano was working for Mr. Moser at Moser Law Firm. Mr. Pagano brought the lead client, Omar Malcom ("Malcolm"), to the firm. Eventually, Mr. Moser decided that: (1) he did not want to make the sizable investment of time and money necessary to properly prosecute the case; and (2) he was not getting a big enough portion of the potential fees. He then fired Mr. Pagano who came to me and we agreed to work the case together. Since then, we have invested significant time and out of pocket expenses to achieve a very favorable settlement for approximately 2,600 hardworking Assistant Deputy Wardens, Captains, and Correction Officers ("Settlement Plaintiffs") who routinely risk their lives. Now, with a settlement reached and an approval motion *sub judice*, Mr. Moser has the temerity to mislead the Court about being counsel and try to obstruct an agreement affecting 2600 Department of Correction employees in a not so thinly veiled attempt to extract money for himself.

**MR. MOSER WAS TERMINATED BY THE PLAINTIFFS IN FEBRUARY 2022**

  Mr. Moser's "applications" rely on his intentional misrepresentation to the Court that he currently represents Plaintiffs. To the contrary, he has repeatedly conceded that he does not. In February 2022, the undersigned emailed Mr. Moser a letter executed by the lead Plaintiffs informing him that he was being terminated as counsel. In response to the letter and email, Mr. Moser sent a response email providing "**Jason I have received your email. I will cease working**

1

**on the case as per the clients instructions."** A true and correct copy of this email exchange is attached hereto as Exhibit A.

Mr. Moser had no involvement in this case whatsoever for the next 22 months. He did not attend any conferences, speak to clients or opposing counsel, participate in discovery, work on motions, nothing. Then, in December 2023, Mr. Moser saw a docket entry advising that the case had settled. Shortly thereafter, he submitted a letter to this Court purporting to assert a lien. In the letter Mr. Moser stated **"[t]his office represented the Plaintiffs from prior to the commencement of the action on November 17, 2020 until on or about February 15, 2022."** Docket Entry 153. Moser has conceded that he has not represented Plaintiffs since February 2022. In addition to the outright admission that he was no longer representing Plaintiffs, his assertion of a lien (which current counsel do not get) further establishes that he no longer represents Plaintiffs. Put simply, Mr. Moser had no interest in this matter whatsoever until he saw a docket entry in December 2023 that this matter was settled and that he could potentially get fees.

Following Mr. Moser's December 2023 letter, I called him multiple times in December and January 2024 to negotiate a deal on his alleged attorney's fees. These calls were not returned. Prior to filing the motion for settlement approval, I again reached out to Mr. Moser and requested: (1) a time to talk about what, if anything, he is owed on the case; and (2) to request an affidavit with his billing so his time could be included as part of our lodestar application. Mr. Moser indicated he would call back.

After a week passed without hearing from Mr. Moser, I wrote to him on July 8, 2024. I wrote, "ha[ve] not heard from you about resolving the fee issue. Our papers are due a week from today so there is some urgency to us talking." On July 10, 2024, Mr. Moser directed me to speak with his counsel, Peter Shipman, and asked, for the first time, for a copy of the Settlement Agreement, which we provided.[1] I was never asked to produce any other documentation. On July 11, 2024, I spoke with Mr. Shipman, and he and I resolved Mr. Moser's legal fee claim based on a percentage of the total fees ultimately approved by the Court. I was also promised Mr. Moser's declaration in connection with our fee application. This agreement was memorialized in an email from me to Mr. Shipman. The next day, I received a call from Mr. Shipman saying he was "embarrassed" and that he "never before had a client go back on a deal", but that Mr. Moser's new demand was over 120% more than what we had previously agreed to. Mr. Moser would not move off this request.

Instead, Mr. Moser filed his frivolous July 15th application in which he falsely claims to represent Plaintiffs. Docket Entry 166. When that failed to get Plaintiffs' counsel to capitulate to his fee demands, he filed the instant frivolous application. Docket Entry 172. Simply stated, Mr. Moser does not actually currently represent Plaintiffs, has admitted as such, and has no standing to make an application regarding the Settlement Agreement.

---

[1] While Mr. Moser now feigns interest in the propriety of the settlement agreement it is noteworthy that he never asked for a copy of the of the settlement agreement he is suddenly so concerned about until I was negotiating a fee with his attorney, despite knowing that one was in the process of being finalized. *See e.g.,* Docket Entry 158, 160, 162.

2

## **THE PROPOSED SETTLEMENT IS FAIR AND SHOULD BE APPROVED**

The proposed settlement agreement is the product of years of litigation (involving substantial motion practice and the exchange of vital documents including payroll data) and a lengthy period of negotiations between Plaintiffs' legitimate counsel[2] on the one hand and Corporation Counsel and Jackson Lewis (one of the pre-eminent employment law firms in the country) on the other hand. Moreover, the settlement was reached with the assistance of a Court-appointed SDNY mediator who himself specializes in employment litigation including FLSA issues. As set forth in Plaintiffs' unopposed approval motion, the proposed settlement agreement is eminently fair and a good result for all Settlement Plaintiffs. Docket Entries 168 and 169.

Notwithstanding the foregoing, Mr. Moser raises several purported issues in the hopes of creating enough chaos to prevent the approval of the settlement and to utilize such chaos to extract attorneys' fees. The alleged issues he raises need to be viewed through this prism, as well as Mr. Moser's concessions, explicit and/or implied, that he has not been counsel in this matter for years, has none of the underlying data on which the settlement is based, and has had no hand in the negotiations or resolution of this matter.

With respect to changes to the notice/consent form, each change was negotiated between Plaintiffs' counsel and Defendants' counsel (Corporation Counsel). The two changes Mr. Moser objects to are: (1) substituting in current counsel for terminated counsel; and (2) clarifying what relief was being sought by adding the words "for the unpaid/delayed payment of overtime wages and related relief[.]" There was nothing improper about the changes and, to the extent Mr. Moser had a genuine issue with them, he could have raised it in connection with any of the approximately 2,600 times the consent form was filed instead of waiting until after an approval motion was submitted years later. Docket Entries 96-132,135.

As to the settlement, there is nothing improper about its negotiation, the agreed upon terms, or the proposed approval process. There is nothing that requires the settlement agreement to be signed by all Plaintiffs. Mr. Malcolm signed it, all other Plaintiffs gave their explicit written consent to be bound by a settlement of the matter, and 16 declarations were submitted in support of it. Docket Entries 1 (p. 17-28), 9-19, 21, 96-132, 135, 168(3), p. 15. Indeed, in the 8 cases the parties cited in their July 19, 2024 joint letter brief where similar collective actions were settled with the City, **none** of the settlement agreements were signed by the Plaintiffs. Docket Entry 171, p. 2-3. Mr. Moser asserts that the declarations in support of the settlement make unsubstantiated claims, but he does not mention what any of them are and given his lack of involvement in this litigation after February 2022 one wonders how he would be able to do so. Indeed, Plaintiffs' counsel has serious doubts regarding Mr. Moser actually being in possession of the declarations since Plaintiffs' counsel was unable to file them on the docket, cannot access them via the docket entries where we attempted to file them, and same were emailed directly to the Court via an email Mr. Moser was not copied on.

---

[2] *See e.g.*, Docket Entries 63(letter from Mr. Pagano advising Court he was now prosecuting case at his own firm with Mr. Pollack and myself), 96(opt-in form authorizing current Plaintiffs' counsel to represent opt-ins), 169(3)(retainer agreements).

3

As to allegedly disguised service awards, there are none. Mr. Moser's own initial complaint sets forth a retaliation claim on behalf of Malcolm which is independent from his (and the rest of the Plaintiffs) unpaid and late paid overtime claims. *See e.g.*, Docket Entry 1, p. 11-13. The $50,000 Malcolm is receiving in connection with the resolution of that claim is fair value as set forth in the Plaintiffs' unopposed approval motion. Moreover, the lead Plaintiffs are not getting "treble damages" service awards. Each Settlement Plaintiff will be receiving a settlement sum which will be determined, in pertinent part, by dividing the total number of overtime hours they worked during the pertinent period of November 17, 2017 to December 14, 2023 (numerator) by the total number of overtime hours worked by all Settlement Plaintiffs during that pertinent period (denominator). Such a proportionate method of calculation is unquestionably proper as set forth in the approval motion. The only nuance is that for the 24 named Plaintiffs the numerator is to be multiplied by 3. The reason for this is simple. FLSA claims have a three-year statute of limitations preceding when a consent to join form is filed. The lead Plaintiffs in this case submitted their forms in November 2020 and January 2021. Docket Entries 1, 9-19, 21. This is as opposed to the opt-in Plaintiffs who did not submit consent forms until November 2022-March 2023. Docket Entries 96-132,135. Even with a tolling agreement blunting some of the impact, given the substantial gap in time between when named Plaintiffs filed their consent forms and when the opt-in Plaintiffs filed theirs, an adjustment had to be made to the formula to be fair to everyone. The three multiplier was negotiated and agreed upon by the parties to address the filing inequity. To further assure the Court, an initial version of the agreement proposed that in calculating each Settlement Plaintiff's settlement sum they would receive a point for each week they worked from the later of the period beginning 3 years before the filing of their consent to join forms or when they became an ADW, Captain, or C.O. and the earlier of December 13, 2023 (the approximate date of the settlement in principle of this matter) or when the Plaintiff stopped being an ADW, Captain or C.O. This proposal was rejected by Plaintiffs' counsel out of concern that the named Plaintiffs' much earlier filings combined with the fact that the awards were not tied to overtime hours worked by each Plaintiff would be *too favorable to the named Plaintiffs*. The multiplier was an eventual compromise.

Moreover, the precise amounts of each of the Settlement Plaintiffs' settlement sums have not been provided for two simple reasons. One, Plaintiffs' counsel are waiting on some final data from the City and two, the Court has not ruled on the amount to be provided to the claims administrator or for attorneys' fees and costs. Without such information it is impossible to provide exact sums for each Settlement Plaintiff. Yet still, far from being "disguised" Malcolm's retaliation damages and the named Plaintiffs' multipliers are disclosed in both the approval motion and in the proposed notice to the collective. *See e.g.,* Docket Entry 168 (5), p. 2.

As to the one-step approval process, the parties' joint letter brief provided why same is appropriate under *Marichal* and that same has been customarily used in this District in settling collective actions against the City. Docket Entry 171. Mr. Moser's attacks on the parties' joint letter brief are wholly unsupported by either law or fact. The parties' estimate on potential additional administrative cost is supported by the costs incurred to date, the fact that the Settlement Plaintiffs want to be bound by the settlement is based on their express written consent and outpouring of support for the settlement, the fact that some Settlement Plaintiffs who have already expressed consent to be bound by the settlement might miss out if resending notice and requiring them to consent again are required is supported by, *inter alia*, common sense that if approximately

4

2,600 people are sent another notice they may not all return it due to a change of address, confusion about having already consented, or any other number of legitimate reasons. Likewise, the parties' concerns about the settlement being fundamentally changed by fewer or more people becoming Settlement Plaintiffs is potentially deal breaking as it has the potential to provide the City with fewer releases than anticipated or dilute the current Settlement Plaintiffs' settlement sums changing the economies of scale for the parties.

## **CONCLUSION**

In closing, Mr. Moser is well aware that the Court can adjudicate any fee issues after settlement approval but knowing that he could never obtain the fees he seeks through a fee application he is instead attempting to exert leverage by sabotaging the entire settlement. He admits he knows nothing about the underlying evidence on which the settlement was based (as he was not counsel) but yet attempts to disrupt the approval process simply because after agreeing to his initial fee demand, we did not simply accede to his new demand that was more than double our agreement. As previously mentioned, Plaintiffs' counsel is willing to hold any attorneys' fees that are awarded in escrow until Mr. Moser's participation (if any) is adjudicated. There is no need to hold up the settlement's approval for Mr. Moser's personal agenda.

Plaintiffs' counsel is happy to have a conference with the Court and Defendants' counsel at the Court's earliest convenience to address any concerns the Court may have about the settlement.

Respectfully submitted,

*Jason Abelove*

Jason L. Abelove

cc: All Counsel of Record (VIA ECF)