

Paul A. Pagano, Esq.
Paul@LawOfficePaulPagano.com
(917)589-1479

**Law Office of Paul A. Pagano, P.C.**

December 7, 2024

**VIA ECF**
The Honorable Andrew L. Carter, Jr., U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

  Re: *Malcolm v. The City of New York*
     20-cv-09641(ALC)

Dear Judge Carter:

  This firm, along with the Law Offices of Jason L. Abelove, P.C. (collectively the "Firms"), are counsel to Plaintiffs in the above-entitled action. This letter is submitted in furtherance of the Firms' request to (1) hold a phone or in-person conference regarding the Moser Firm's alleged charging lien; (2) hold a pre-motion conference in connection with moving to discharge the Moser Firm's alleged charging lien; and/or (3) set a date for an attorney fee hearing regarding the charging lien, and in response to the Moser Firm's letter submitted on the evening of January 6, 2024. *See* Docket Entries 185 and 188.

  As the Court may recall, on December 22, 2023, after becoming aware that a settlement in principle had been reached for this matter, Mr. Moser wrote to this Court asserting that he had a claim for attorneys' fees in this matter stemming from an employment agreement between the Moser Firm and me in my individual capacity when I worked for the Moser Firm, the Moser Firm's retainer agreement with the plaintiffs and NY Judiciary Law § 475 (which concerns charging liens). Docket Entry 153. While the Moser Firm said it had a "lien" arising out of all of the foregoing, it actually had a purported contractual claim stemming from the employment agreement and a purported charging lien created by operation of law. While the Moser Firm suggests that the absence of a response letter is a damning admission, no response was required or necessary to the mere assertion of a lien which the Firms knew would eventually be adjudicated.

  The Moser Firm's behavior subsequent to its December 22, 2023 filing is well documented and includes, but is not limited to, submitting letters in July 2024 trying to invalidate the arms-length, mediated settlement in this matter by claiming to be plaintiffs' counsel when it was terminated well prior, claiming there were issues with the settlement (when it conceded that it had none of the underlying documents on which the settlement was based), and demanding to submit papers on the settlement when it had no authority to do so, all in an effort to extract attorneys' fees.[1] *See e.g.* Docket Entry 185 and 185(1).

---

[1] With respect to the Moser Firm's purported recitation of the pertinent background and case history of this matter, I note that the Moser Firm's attempts at revisionist history are wildly inaccurate and to the extent Mr. Moser ever deigns to submit a sworn affidavit/declaration or documentary evidence in this or any other proceeding it will be exposed for the tale that it is. Should the Court be so inclined, I am more than happy to discuss chapter and verse the inaccuracies in Mr. Moser's unsworn submissions. By contrast, the sworn history of this matter is set forth in my affidavit attached hereto as Exhibit A.



Paul A. Pagano, Esq.  
Paul@LawOfficePaulPagano.com  
(917)589-1479

**Law Office of Paul A. Pagano, P.C.**

---

On July 15, 2024, the Firms submitted a motion for approval of the settlement. Docket Entry 168. Mr. Moser refused to provide his time in support of that application. Now, Mr. Moser disingenuously objects to the fact that an application for fees was not made on behalf of his firm, notwithstanding that he refused several requests to provide his time records and a declaration supporting same. Docket Entry 174, p. 2; Docket Entry 188, p. 4. Indeed, even now the Moser Firm refuses to produce time records because it knows that its records will not support the award it seeks.

On August 8, 2024, the Court held a conference with respect to the issues caused by the Moser Firm, during which the Moser Firm conceded that its applications to invalidate the settlement agreement on behalf of 2,600 employees of the Department of Correction were in furtherance of what Mr. Moser called the "elephant in the room" which was the Moser Firm's request for fees, and the Court terminated the Moser Firm from the docket. Docket Entry 185, p. 2. Notably, while Mr. Moser's January 6, 2024 letter provides that the Firms never filed a motion for substitution of counsel under Local Civil Rule 1.4, Local Civil Rule 1.4 does not require incoming counsel to make the motion and under the New York Rules of Professional Conduct, specifically 1.16(b)(3), "a lawyer shall withdraw from the representation of a client when:…(3) the lawyer is discharged." Docket Entry 188, p. 4. Mr. Moser's failure to move to withdraw when terminated is yet another ethical violation in a course of conduct littered with them. Moreover, Mr. Moser's letter repeatedly suggests that during the August 8, 2024 conference with the Court the Firms either tacitly or expressly agreed that he had a lien based on the employment agreement. *See e.g.*, Docket Entry 188, p. 1, 4. Mr. Moser is flatly incorrect. The entire point of the conference was to resolve the Moser Firm's claims of continuing to represent the plaintiffs and purported issues with the settlement so that approval of the settlement could move forward. Docket Entry 185(2) p. 4 lines 16-18. It was not the time for the parties to air their positions with respect to the viability of any agreements or purported liens. Indeed, Mr. Abelove said during the conference "I think that to the extent Mr. Moser is entitled to fees, that can be dealt with later." Docket Entry 185(2), p. 8 lines 21-24. At no point did Mr. Abelove, and certainly at no point did the undersigned who never spoke on the record, agree, *inter alia*, that there was any validity to any purported lien or that the Moser Firm was entitled to fees in connection with an employment agreement between the Moser Firm and me individually. The Firms merely agreed that the attorney fee dispute would be dealt with after the settlement was approved and that the approval of the settlement did not vitiate any purported claim the Moser Firm had for fees.

On August 28, 2024, the settlement agreement was approved. Docket Entry 180. Rather than return to the Court and move to fix its alleged charging lien, the Moser Firm filed a demand for arbitration against the undersigned individually and the Law Office of Paul A. Pagano, P.C. ("Pagano Firm"). The demand falsely claimed that the undersigned breached the employment agreement between me individually and the Moser Firm by "refus[ing] to split attorneys fees earned in accordance with the terms of the agreement" and demanded the *entirety of the legal fee awarded in this matter based on the alleged breach*. Exhibit B hereto, p. 1. Thereafter, the undersigned and the Pagano Firm retained Certilman Balin Adler & Hyman, LLP to bring an action in Nassau County Supreme Court by order to show cause pursuant to Article 75 of the CPLR to stay the arbitration. With respect to the Pagano Firm, it is hornbook law that a permanent stay of an arbitration is mandatory where there is no agreement to arbitrate. *TBA Global, LLC v. Fidus*



Paul A. Pagano, Esq.
Paul@LawOfficePaulPagano.com
(917)589-1479

Law Office of Paul A. Pagano, P.C.

*Partners, LLC*, 132 A.D.3d 195, 197 (1st Dep't, 2015); *Katz v. Alpert*, 68 A.D.3d 640, 641 (1st Dept 2009).  The Moser Firm has not and cannot establish that the Pagano Firm (or for that matter the Abelove Firm) is a signatory to an agreement to arbitrate with the Moser Firm because it simply is not.  As to me in my individual capacity, the subject employment agreement provides, that for all contingency matters I originated while working for the Moser Firm, of which the instant matter is one, I "shall receive 65% of the Net Fees [fees less costs] collected by [the Moser] Firm and [the Moser] Firm shall retain 35% of the Net Fees collected by [the Moser] Firm."  Exhibit C, p. 2 (Section 2.2.1).  The employment agreement also provides that the payment to me individually of the 65% of the Net Fees collected by the Moser Firm and the retention of the 35% of the Net Fees collected by the Moser Firm survives the termination of the agreement.  Exhibit C, p. 6 (Section 6.3). Given the foregoing, any arbitration against me individually is improper at this juncture since the Moser Firm's collection of fees is a precursor to any dispute regarding the distribution of same under the employment agreement and as the Pagano Firm and Abelove Firm are necessary parties to any claim by the Moser Firm for fees in this matter and the Pagano and Abelove Firms cannot be compelled to arbitrate.  Recognizing the likelihood of success on the merits, the presence of irreparable harm, and the balancing of the equities in the favor of the Pagano Firm and myself individually the Nassau County Supreme Court granted a temporary restraining order staying the arbitration.  Exhibit D, p. 2.  Notably, to date, the Moser Firm has had two opportunities to submit opposition papers to the order to show cause and has utterly failed to do so both times instead seeking adjournments.

On December 6, 2024, the Firms reached out to the Court requesting it to: (1) hold a phone or in-person conference regarding the Moser Law Firm's alleged charging lien; (2) hold a pre-motion conference in connection with moving to discharge the Moser Law Firm's alleged charging lien; and/or (3) set a date for an attorney fee hearing in connection with the charging lien.  Docket Entry 185.  The Moser Firm's opposition to the Firms' request is that it "should be denied as premature" alleging that I conceded that the issue is not ripe for adjudication as the representation of the Plaintiffs in this matter has not been concluded.  Docket Entry 188, p. 1.  Unsurprisingly, the Moser Firm mischaracterizes the Firms' prior submission.  In the Firms' prior submission it was noted that the Moser Firm should not be entitled to any fees due to its abandonment of the case and that if the Court overlooked such abandonment, which it should not, an analysis of the amount of fees owed the firms would rely on, *inter alia*, the amount of hours worked, and that since the Pagano Firm and Abelove Firm would likely spend many more hours administering the settlement, under ideal circumstances, an adjudication would await the full administration of the settlement.  Docket Entry 185, p. 3.  The Firms also noted that given the Moser Firm's action of "filing for arbitration… a quicker resolution [was required]."  Docket Entry 185, p. 3.  Simply put, now is the perfect time to adjudicate the Moser Firm's alleged charging lien.  If and when this Court determines that the Moser Firm is entitled a portion of the attorneys' fees in this matter, which it should not, the Moser Firm is free to pursue an arbitration against me individually if it believes there has been a violation of the employment agreement.  Rest assured, I, in my individual capacity, will be asserting several counterclaims if and when the arbitration moves forward.

Paul A. Pagano, Esq.
Paul@LawOfficePaulPagano.com
(917)589-1479

Law Office of Paul A. Pagano, P.C.



**Conclusion**

  Plainly stated, the Moser Firm is seeking to receive fees in connection with the instant matter through two methods: an employment agreement between the Moser Firm and myself individually concerning work performed by the Moser Firm and a purported charging lien pursuant to NY Judiciary Law § 475. The dispute with respect to the charging lien is between former counsel (the Moser Firm) and current counsel (the Pagano Firm and the Abelove Firm). That issue is ripe for adjudication. To the extent Mr. Moser has an issue with me individually as it pertains to the employment agreement, the Nassau County Supreme Court will first decide when and if arbitration is appropriate. If it is decided that arbitration is not appropriate, then any disputes will proceed in a court[2] and if it is decided that arbitration is appropriate than arbitration will move forward. There is no basis to delay the adjudication of the Moser Firm's purported charging lien any further.

            Respectfully submitted,
            Law Office of Paul A. Pagano, P.C.

         By: *Paul Pagano*
            Paul A. Pagano, Esq.
            *Attorneys for Plaintiffs*
            100 Duffy Street, Suite 510
            Hicksville, NY 11801
            (917) 589-1479

cc: All Counsel of Record (VIA ECF)

---

[2] Indeed, in the conclusion of Mr. Moser's letter he tacitly concedes that the claims the firms may have with respect to each other are appropriate for judicial adjudication. Docket Entry 188, p. 5.