

Paul A. Pagano, Esq.
Paul@LawOfficePaulPagano.com
(917)589-1479

**Law Office of Paul A. Pagano, P.C.**

March 14, 2025

<u>**VIA ECF**</u>
The Honorable Andrew L. Carter, Jr., U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

      Re:    *Malcolm v. The City of New York*
             20-cv-09641(ALC)

Dear Judge Carter:

      This firm ("Pagano Firm"), along with the Law Offices of Jason L. Abelove, P.C. ("Abelove Firm" and collectively the "Plaintiffs' Firms"), are counsel to Plaintiffs in the above-entitled action. This letter is submitted in response to the Court's February 26, 2025 order directing that the parties give the Court their positions on how *Emile v. Ethical Culture Fieldston Sch.*, No. 21-CV-3799 (JPO), 2024 WL 1216473, (S.D.N.Y. Mar. 21, 2024) and *Love & Madness, Inc. v. Claire's Holdings, LLC*, No. 21CIV1913ATSLC, 2021 WL 4554058 (S.D.N.Y. Oct. 4, 2021), if at all, affect the instant fee dispute in this case. Docket Entry ("D.E.") dated February 26, 2025.

      Given the Moser Firm's past conflation of the disputes pertaining to this litigation, it is necessary to set forth the parameters of the Plaintiffs' Firms' request for relief before analyzing the subject cases and their application. On December 22, 2023, the Moser Firm submitted a letter to the Court asserting a "lien" pursuant to its retainer agreement(s) with the 24 lead plaintiffs,[1] an employment agreement between myself individually and the Moser Firm, and Judiciary Law § 475. D.E. 153. In reality, the Moser Firm has an alleged charging lien that arises by operation of law pursuant to Judiciary Law § 475 that concerns the apportionment of fees between outgoing counsel (the Moser Firm) and incoming counsel (the Plaintiffs' Firms) and a baseless claim for breach of the employment agreement (a dispute between me and the Moser Firm which is the subject of a presently stayed arbitration). All the Plaintiffs' Firms seek is an adjudication of the charging lien.

      **A.**      <u>**The Court has authority to hear and determine the charging lien dispute**</u>

      In *Love & Madness, Inc. v Claire's Holdings*, LLC, 2021 US Dist LEXIS 190851, at *5-6 (SDNY Oct. 4, 2021), the Court noted that a federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes and that in a suit based on a federal statute with a fee shifting provision, as here, the matter of attorneys' fees "becomes part of an inextricable whole." While the fee dispute in *Love* was between a client and its counsel and this is between counsel there is nothing to suggest that the holding is any less applicable. Indeed, federal courts routinely hear fee disputes between successive counsel. *See e.g.*, *Jeon v Riley*, 2021 US Dist LEXIS 45732, at *4-

---

[1] The Moser Firm never had an agreement with or represented the nearly 2,600 non-lead Plaintiff collective members.

1



Paul A. Pagano, Esq.
Paul@LawOfficePaulPagano.com
(917)589-1479

Law Office of Paul A. Pagano, P.C.

13 (EDNY Mar. 10, 2021). Consistent with the foregoing, the Court unquestionably has the authority to adjudicate the validity and amount of the Moser Firm's alleged charging lien.

Based on the Moser Firm's prior submissions, it is anticipated that it will seek to prevent this Court from adjudicating its purported charging lien on two grounds. First, it may argue that an adjudication is premature since the Plaintiffs' Firms' representation of Plaintiffs is still ongoing. The only remaining work on the litigation is finalizing the administration of the settlement and the Plaintiffs' Firms are prepared to testify as to the anticipated number of hours required for same.

Second, the Moser Firm may argue that the charging lien must be arbitrated. Such an argument would be incorrect. "It is well established that a party cannot be forced to submit a dispute to arbitration in the absence of an agreement to that effect." *Intl. Trust Co. of Berm. v Fahnestock & Co.*, 1995 US Dist LEXIS 15050, at *7-8 (SDNY Oct. 11, 1995); *Metro. Life Ins. Co. v Bucsek*, 919 F3d 184, 190 (2d Cir 2019)("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") Here, it is indisputable that there is no agreement, let alone one to arbitrate, between either the Pagano Firm or the Abelove Firm and the Moser Firm. As such, the Plaintiffs' Firms cannot be compelled to arbitrate the charging lien issue. The Moser Firm may attempt to circumvent the foregoing axiom of law by noting that there is an arbitration provision in the employment agreement between myself individually and the Moser Firm from when I worked at the Moser Firm and that under certain very limited circumstances non-signatories have been compelled to arbitrate disputes. Such circumstances are: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel. *Merrill Lynch Inv. Mgrs. v Optibase, Ltd.*, 337 F3d 125, 129 (2d Cir 2003). None are applicable: (1) there is no agreement between the Moser Firm and the Pagano Firm, let alone one that incorporates an arbitration provision by reference; (2) the Pagano Firm has not assumed any agreement to arbitrate (indeed it has successfully stayed the Moser Firm's improperly initiated arbitration for purported breach of the employment agreement); (3) the employment agreement was executed by me individually before the Pagano Firm ever existed and as such there is no agency argument; (4) as to veil piercing/alter ego, a non-signatory "may be bound to arbitrate where it exercised complete control over a signatory and employed that domination to injure another signatory to the agreement."[2] There can be no genuine argument that the Pagano Firm (a corporation) exercised complete control/domination over me personally and used that control to injure the Moser Firm; and (5) under an estoppel theory, a party is estopped from avoiding arbitration when it has received a direct benefit from an agreement containing an arbitration clause. *Boroditskiy*, 314 F Supp 3d at 495. "Benefits are direct when specifically contemplated by the relevant parties; and benefits are indirect when the parties to the agreement with the arbitration clause would not have originally contemplated the non-signatory's eventual benefit." Id. Additionally, "a benefit is indirect 'where the nonsignatory exploits the contractual relation of parties to an agreement but does not exploit (and thereby assume) the agreement itself.'" Id. The fees that the Pagano Firm were awarded from the instant litigation are derived from its retainer agreements with its clients and the work it performed, not from the employment agreement. Moreover, there can be no genuine argument that the Pagano Firm received a direct benefit from the employment agreement as, *inter alia*, the Pagano Firm did not assume my obligations under the employment agreement and, as the Pagano Firm was not in

---

[2] *Boroditskiy v Eur. Specialties LLC*, 314 F Supp 3d 487, 494 (SDNY 2018).



Paul A. Pagano, Esq.
Paul@LawOfficePaulPagano.com
(917)589-1479

**Law Office of Paul A. Pagano, P.C.**

existence at the time of the execution of the employment agreement, the Moser Firm and me could not have contemplated any eventual benefit to the Pagano Firm.

Finally, as to the fact that I own and run the Pagano Firm, "**the mere fact of a nonsignatory's affiliation with a signatory will not suffice to estop the non signatory from avoiding arbitration, <u>no matter how close the affiliation is</u>**." *Oppenheimer & Co. v Deutsche Bank AG*, 2010 US Dist LEXIS 19655, at *5 (SDNY Mar. 2, 2010)(emphasis added). Simply put, this Court has the authority to adjudicate the charging lien dispute.

    **B.**    <u>**The Moser Firm's purported charging lien should be discharged**</u>

As accurately set forth in *Love & Madness, Inc*. if an attorney withdraws without cause, or is terminated for cause, it cannot maintain a charging lien. *Love & Madness, Inc.*, 2021 US Dist LEXIS 190851, at *5-10. Instances of "for cause" termination include: (1) the attorney's failure to perform under the employment contract; (2) his lack of diligence in so performing; (3) his lack of ordinary skill or care in so performing; (4) his making of demands on the client which violate the terms or exceed the scope of the contract; (5) his taking of actions contrary to the client's interests or objective; (6) his indulging in some sort of unprofessional conduct while handling the client's affairs; (7) his venting of personal or economic hostility toward the client; and (8) his loss of the client's trust and confidence. Id. at *10.

Here, the retainer agreement(s) between the 24 lead Plaintiffs and the Moser Firm required the Moser Firm to fund the litigation. Additionally, the written agreement between me and the Moser Firm required the Moser Firm to fund the litigation and provided that for contingency fee cases I originated, such as the instant one, I would be entitled to 65% of the Net Fees (fees less costs) collected by the Moser Firm and it would be entitled to retain 35% of the Net Fees collected by the Moser Firm. Exhibit A (Sections 2.2.1 and 3).

In breach of the retainer agreement(s) and the agreement between me and the Moser Firm the Moser Firm refused to fund the litigation/accept the 35% taking the position that the 35% figure "only worked" for "small cases" rather than "big cases." When the Moser Firm could not force me into rewriting the employment agreement to my detriment, on December 28, 2021, it fired me. In February 2022, the lead Plaintiffs executed a letter informing the Moser Firm that since they had come to the Moser Firm for me, they were choosing to go with the Pagano Firm and any firm I chose to affiliate with. Exhibit B. Also in February 2022, the lead Plaintiffs signed retainer agreements with the Plaintiffs' Firms, including the Abelove Firm who was willing to and did in fact fund the litigation.

The Moser Firm's failure to fund the litigation is tantamount to a withdrawal without cause. Further, the Moser Firm has taken actions directly contrary to its former clients' interests by attempting to obstruct the settlement of this matter for its own financial gain. Exhibit C. For the foregoing reasons, the Moser Firm's purported charging lien should be discharged.

    **C.**    <u>**If the Moser Firm's charging lien is not discharged it should be allotted a *de minimis* portion of the fees**</u>

3



**Paul A. Pagano, Esq.**
Paul@LawOfficePaulPagano.com
(917)589-1479

**Law Office of Paul A. Pagano, P.C.**

If the Court does not discharge the Moser Firm's charging lien outright, a decision will have to be made with respect to what amount of the fees the Moser Firm is entitled to, if any. In that regard neither *Emile* nor *Love & Madness, Inc*. are precisely on point. In those cases, the Courts set forth the factors that they analyze in determining a fee dispute between a client and a discharged attorney. When there is a dispute between outgoing and incoming counsel, as here, the outgoing counsel has the option of electing to seek a fixed dollar amount in quantum meruit or a contingent percentage fee based on the proportionate share of the work performed on the case. *Lai Ling Cheng v Modansky Leasing Co.*, 73 NY2d 454, 458 (1989). Here, the Moser Firm did not make a choice at the time it was terminated; a fact which courts have construed as electing to receive a proportionate share of the contingent fee. *Cohen v Grainger, Tesoriero & Bell*, 81 NY2d 655, 659 (1993).

In making a determination on the percentage of fees to be allotted to each firm Courts look at the following factors, which are similar to those in *Emile* and *Love & Madness, Inc.*: (1) the time and labor spent by each firm; (2) the actual work performed by each firm; (3) the difficulty of the questions involved; (4) the skills required to handle the matter; (5) the attorney's skills and experience, and (6) the effectiveness of counsel in bringing the matter to resolution. *Foppiano v City of NY*, 2002 US Dist LEXIS 28517, at *10 (SDNY Sep. 25, 2002). Here, every single factor is in favor of awarding the Plaintiffs' Firms the lion's share of the recovery or is, at absolute worst, neutral. As to the first factor, while employed at the Moser Firm I spent 82.7 hours working on the instant matter. As of the time I left the firm Mr. Moser had approximately 58.5 hours. His counsel has since represented that he in fact had 79 hours, but the Moser Firm has refused to produce any time records. The Plaintiffs' Firms have hundreds of hours of time invested in the matter with such time continuing to increase as the Plaintiffs' Firms complete the administration of the settlement.

As to the actual work performed, the Moser Firm's work consisted primarily of client intake, the drafting of complaints, and the drafting of moving papers on the motion for conditional certification. The Plaintiffs' Firms' work included submitting a reply on the Plaintiffs' conditional certification motion, drafting and submitting a second amended complaint in order to restore a 3rd year of damages and liquidated damages which were potentially lost when portions of the Moser Firm's first amended complaint were dismissed, opposing and prevailing on a motion to dismiss the second amended complaint, drafting discovery demands, completing initial disclosures, prevailing on the conditional certification motion, retaining a third party claims administrator at substantial expense to the Abelove Firm to distribute notices, processing and redacting approximately 2,600 claim forms, analyzing thousands of lines of data produced by the Defendant, engaging in informal settlement discussions with Corporation Counsel, drafting a mediation statement, attending mediation with Defendant's current counsel, settling the matter for $6.2 million, drafting and submitting the settlement agreement and approval motion, and overseeing administration of the settlement. It must also be stressed that the Plaintiffs' Firms took on all of the financial risk the Moser Firm declined to. Additionally, moving papers on the conditional certification motion notwithstanding, the Moser Firm only ever represented the 24 lead Plaintiffs. All of the work on behalf of the approximately 2,600 collective members and the majority of the important work with respect to the 24 named Plaintiffs was done by the Plaintiffs' Firms.

Paul A. Pagano, Esq.
Paul@LawOfficePaulPagano.com
(917)589-1479

**Law Office of Paul A. Pagano, P.C.**



    As to the difficulty of the questions involved, all of the firms faced the issue of whether the Assistant Deputy Wardens and Captains would be exempt from overtime under the FLSA but the Plaintiffs' Firms had to confront this and other issues (e.g. contractual versus FLSA overtime, the impact of meal breaks, whether ADW and Captain damages could be included in the settlement and whether they should participate in the settlement recovery) in a more tangible way during, *inter alia*, the analyzing of the data provided by the City and the negotiation of the settlement.

    As to the skills required to handle the matter and the attorneys' skills and experience, the Moser Firm handled the drafting of the initiating documents and the moving papers on the conditional certification motion while the Plaintiffs' Firms also handled initiating documents (drafting and filing the second amended complaint), had to analyze substantial data, and had to attend a mediation and negotiate the settlement. All of the attorneys' involved had the skills and experience to handle the matter from inception to resolution with Mr. Abelove bringing the most trial experience to the table had that been required.

    As to the effectiveness of counsel in bringing a resolution to the matter there can be no comparison. At the time that the Moser Firm was discharged its was refusing to fund the litigation, had filed complaints, and filed the moving papers on the motion for conditional certification. By contrast, the Plaintiffs' Firms took every material step to bring this matter to a successful conclusion including, but not limited to, getting a third year of damages and liquidated damages reinstated when the Moser Firm's first amended complaint was dismissed in part (D.E. 67), processing all of the opt-in forms, obtaining and analyzing all of the time and payroll data, engaging in settlement discussions and mediation, settling the case for $6.2 million, getting the settlement approved, and administering the settlement. In closing, it bears repeating that rather than bring about a result, the Moser Firm attempted to obstruct an arm's length mediated settlement in order to obtain attorneys' fees.

## **Conclusion**

    The holdings of *Emile, Love & Madness, Inc., Cohen* and *Fappiano* establish that the Court has the authority to hear and determine the charging lien dispute and further provide the criteria by which same should be adjudicated. Consistent with those holdings, to the extent the Moser Firm's lien is not discharged outright, the overwhelming majority of the fees for this matter should be awarded to the Plaintiffs' Firms.

    Respectfully submitted,
Law Office of Paul A. Pagano, P.C.

By: *Paul Pagano*
Paul A. Pagano, Esq.
*Attorneys for Plaintiffs*
100 Duffy Street, Suite 510
Hicksville, NY 11801
(917) 589-1479

cc: All Counsel of Record (VIA ECF)