

**MOSER LAW FIRM, PC**

**Steven J. Moser**
Tel: 631-824-0200
steven.moser@moserlawfirm.com

July 15, 2024

**VIA ECF**

Hon. Andrew L. Carter, USDJ
United States District Court, SDNY
40 Foley Square, Rm 435
New York, NY 10007

    Re:    *Malcolm v City of New York,* Case No. 20-cv-9641

Dear Judge Carter:

    I am co-counsel of record for the Plaintiffs in the above referenced matter. Today is the current deadline for filing the motion for approval of the proposed FLSA settlement reached between Jason Abelove, Esq., Paul Pagano, Esq. and the City of New York. The settlement agreement was furnished to our office for the first time on July 10, 2024. We respectfully request until July 29, 2024 to submit our position on the proposed settlement.

                        Respectfully submitted,

                        *Steven J. Moser*

                        Steven J. Moser

CC:    All counsel of record via ECF

<div style="text-align:center">

LAW OFFICES OF
# JASON L. ABELOVE, P.C.
666 OLD COUNTRY ROAD
SUITE 303
GARDEN CITY, NEW YORK 11530

</div>

TELEPHONE: 516-222-7000           FACSIMILE: 516-542-2001
E-MAIL: jason@jasonabelove.com           www.JasonAbelove.com

<div style="text-align:center">July 15, 2024</div>

**VIA ECF**
Hon. Andrew L. Carter
United States District Court, SDNY
40 Foley Square, Room 435
New York, NY 10007

  Re: *Malcolm v City of New York*
     Docket No.: 20-cv-9641

Dear Judge Carter:

  This firm along with the Law Office of Paul A. Pagano, P.C. and the Law Offices of Yale Pollack, P.C. are counsel for Plaintiffs in the above referenced matter. This letter is submitted in opposition to the request of the Moser Law Firm, P.C. ("Moser Firm") to, "submit [its] position on the proposed settlement."

  Initially, the Moser Firm was terminated as counsel by Plaintiffs in this action in February 2022. Moser's position as former counsel does not give him authority to submit a position on a proposed settlement which has been agreed to by current Plaintiffs' counsel, Defendants' counsel, and the parties. It is undisputed that the Moser Firm had nothing to do with the negotiation of the Settlement Agreement or the upcoming Motion for Settlement Approval. Indeed, Moser is not even in possession of any of the underlying discovery on which the settlement was reached. Without any data, how could he possibly "comment" on the Agreement.

  This is nothing more than the Moser Firm's attempt to recover attorneys' fees. Certainly, to the extent the Moser Firm has any right to any attorneys' fees for the period of time it was counsel, Moser is free to make whatever application he thinks is appropriate once the settlement is approved and fees are awarded. There is no reason for him to "comment" in any way on a settlement agreement in a matter in which he did not represent any party to the agreement at the time it was made.

  As for the settlement agreement, Plaintiffs will be submitting their approval motion today. In connection with the motion, we asked Mr. Moser to submit his time records and a declaration substantiating same. So far he has refused to do so.

      Finally, there is no reason for Mr. Moser to seek a delay of a settlement which impacts a Collective of 2,600 members. We will hold all attorneys' fees in escrow until this dispute is resolved so the Collective can receive its compensation.

      Thank you for your attention to this matter.

                                  Very truly yours;

                                  Jason L. Abelove

JLA:

cc:      All ECF Counsel



**MOSER LAW FIRM, PC**

**Steven J. Moser**
Tel: 631-824-0200
steven.moser@moserlawfirm.com

July 24, 2024

**VIA ECF**

Hon. Andrew L. Carter, USDJ
United States District Court, SDNY
40 Foley Square, Rm 435
New York, NY 10007

    Re: *Malcolm v City of New York,* Case No. 20-cv-9641

Dear Judge Carter:

    I am compelled to respond to Abelove's letter dated July 15, 2024 (ECF No. 167), in which he misstates that the undersigned was "terminated" in February 2022. By this letter, the Moser Law Firm, PC requests an order directing Messrs. Pagano, Pollack, and Abelove to share with the undersigned the data underlying the proposed settlement and for leave to a brief not to exceed 10 pages regarding the proposed settlement on or before August 9, 2024.

    Local Rule 1.4 states that "[a]n attorney who has appeared as attorney of record for a party may be relieved or displaced *only by order of the Court* and may not withdraw from a case without *leave of the Court granted by order*. Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for. . . displacement and the posture of the case, including its position, if any, on the calendar and whether or not the attorney is asserting a retaining or charging lien." (emphasis added). As neither Mr. Abelove nor Mr. Pagano filed a motion to displace the undersigned, I am currently counsel of record for the Plaintiffs. Nevertheless, neither counsel for the City of New York nor Messrs. Abelove and Pagano have furnished the calculations and spreadsheets underlying the proposed settlement to the undersigned.

    On August 23, 2021, the Moser Law Firm, PC, filed a motion for conditional certification and notice to the putative opt-ins. (ECF Nos. 45-48). The proposed notice identifies the Moser Law Firm, PC, as the plaintiff's counsel. *See* Proposed Notice (ECF 46-1, page 5 of 6)(stating in response to "Do I have a lawyer in this case?" that "If you choose to join this lawsuit, you may be represented by Paul A. Pagano, Esq. and Steven J. Moser, Esq. of the Moser Law Firm, P.C., 5 East Main Street, Huntington NY 11743, http://www.moseremploymentlaw.com; Tel (631) 824-0200."), and give the Moser Law Firm the authority to file the consent. The notice also advises that "[u]nder the fee agreement, in the event there is a recovery, *Plaintiffs' counsel* will receive a percentage of any settlement obtained[.]" *Id.*

    On February 21, 2022, Messrs. Pagano, Pollack, and Abelove submitted a reply brief in support of the motion for conditional certification in which they advised the Court of their consent to only two changes to the proposed notice: (1) language stating that putative opt-ins could "retain

Hon. Andrew L. Carter, Jr., USDJ  
Re: *Malcolm v. City of New York*  
Page 2

MOSER LAW FIRM, PC 

their own counsel" and to (2) adding the DOC's counsel's information. (ECF No. 65, page 14 of 15).

On September 30, 2022, the Court issued a docket order finding that "The plaintiff has met his modest burden showing that the plaintiffs are similarly situated. Plaintiff consented to minor changes in the proposed notice. The notice *as modified by plaintiff's consent* is approved." (emphasis added).

After that, on November 13, 2022, Messrs. Pagano, Pollack and Abelove made changes to the notice and consent forms without obtaining Court approval or moving to displace the undersigned as counsel of record. More specifically, although Messrs. Pagano, Pollack, and Abelove have not furnished a copy of the notice which was mailed to the collective, the language "for the unpaid/delayed payment of overtime wages and related relief" was added to the consent form and the "Law Offices of Jason L. Abelove PC, the Law Office of Paul A. Pagano, P.C., and the Law Offices of Yale Pollack, PC (collectively the "Firms")" were substituted for the Moser Law Firm, PC. (Compare ECF No. 46-1 with ECF No. 131, annexed hereto as Exhibits 1 and 2). While Messrs. Pagano, Pollack, and Abelove may believe that the Court gave its *implied consent* to changes to the notice, the appropriate course would have been to seek approval of changes *not explicitly authorized by the Court.*

Of greater concern is the settlement itself. It is not signed by the Plaintiffs. The declarations in support of the settlement make unsubstantiated claims. The proposed settlement contains a disguised service award to Plaintiff Malcolm in the sum of $50,000 and a "treble damages" service award to the named plaintiffs, the precise amount of which has not been calculated or disclosed. On July 19, 2024, in response to the Court's expressed due process concerns regarding a 1-step settlement, Mr. Pagano submitted a letter stating that *Marichal v Attending Home Care Servs., LLC*, 432 F Supp 3d 271 (EDNY 2020) supports the proposed settlement's approval. As the Court is well aware, neither *Marichal* nor any other cases cited by Mr. Pagano support the fairness of the proposed settlement.

Counsel's reasons for not providing for a two-step settlement are that (1) the claims administration expenses will go up by $30,000.00 (less than ½ of 1 percent of the settlement amount), (2) the collective members should not be required to "give consent again" because they might fail to do so "even though they want to participate in the settlement," and (3) if notice is sent to the over 12,000 potential collective members giving them the opportunity to join, the settlement would be "diluted." Because there are 2,600 collective members, the cost of mailing notice ($11 per person) is wildly exaggerated. However, even if not wildly exaggerated, the cost of $11 per person in exchange for the collective's due process rights is a bargain, especially considering the amount of the disguised incentive awards. The statement that requiring notice to the collective could result in the exclusion of collective action members who might want to participate in the settlement is no more grounded than Mr. Pagano's assumption that all 2,600 collective action members actually "want to participate." The suggestion that the proposed settlement was not, in fact, for the 2,600-member collective but instead covers 12,000 individuals who might want to opt in is equally absurd.

Case 1:20-cv-09641-ALC-SDA   Document 167-3   Filed 07/23/25   Page 6 of 31


Hon. Andrew L. Carter, Jr., USDJ       MOSER LAW FIRM, PC
Re:    *Malcolm v. City of New York*
Page 3

       We remain willing to cooperate with Messrs. Abelove and Pagano to consummate a fair FLSA settlement. To date have been met with hostility.

                                              Respectfully submitted,

                                              *Steven J. Moser*
                                              Steven J. Moser

CC:    All counsel of record via ECF

5 E. MAIN ST., HUNTINGTON, NY 11743
WWW.MOSEREMPLOYMENTLAW.COM

Law Offices of

# Jason L. Abelove, P.C.

666 Old Country Road
Suite 303
Garden City, New York 11530

Telephone: 516-222-7000
E-mail: jason@jasonabelove.com

Facsimile: 516-542-2001
www.jasonabelove.com

July 30, 2024

**VIA ECF**
The Honorable Andrew L. Carter, Jr., U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

    Re:    *Malcolm v. The City of New York*
              20-cv-09641(ALC)

Dear Judge Carter:

       This letter is submitted on behalf of the Law Offices of Jason L. Abelove, P.C. and the Law Office of Paul A. Pagano, P.C. in response to the Court's July 26, 2024 order directing a response to the July 25, 2024 letter of the Moser Law Firm.

       Mr. Moser's actions, including his July 15th and July 25th letters, are the epitome of bad faith. For context, the instant litigation was started when Mr. Pagano was working for Mr. Moser at Moser Law Firm. Mr. Pagano brought the lead client, Omar Malcom ("Malcolm"), to the firm. Eventually, Mr. Moser decided that: (1) he did not want to make the sizable investment of time and money necessary to properly prosecute the case; and (2) he was not getting a big enough portion of the potential fees. He then fired Mr. Pagano who came to me and we agreed to work the case together. Since then, we have invested significant time and out of pocket expenses to achieve a very favorable settlement for approximately 2,600 hardworking Assistant Deputy Wardens, Captains, and Correction Officers ("Settlement Plaintiffs") who routinely risk their lives. Now, with a settlement reached and an approval motion *sub judice*, Mr. Moser has the temerity to mislead the Court about being counsel and try to obstruct an agreement affecting 2600 Department of Correction employees in a not so thinly veiled attempt to extract money for himself.

## MR. MOSER WAS TERMINATED BY THE PLAINTIFFS IN FEBRUARY 2022

       Mr. Moser's "applications" rely on his intentional misrepresentation to the Court that he currently represents Plaintiffs. To the contrary, he has repeatedly conceded that he does not. In February 2022, the undersigned emailed Mr. Moser a letter executed by the lead Plaintiffs informing him that he was being terminated as counsel. In response to the letter and email, Mr. Moser sent a response email providing "**Jason I have received your email. I will cease working**

1

**on the case as per the clients instructions."** A true and correct copy of this email exchange is attached hereto as Exhibit A.

Mr. Moser had no involvement in this case whatsoever for the next 22 months. He did not attend any conferences, speak to clients or opposing counsel, participate in discovery, work on motions, nothing. Then, in December 2023, Mr. Moser saw a docket entry advising that the case had settled. Shortly thereafter, he submitted a letter to this Court purporting to assert a lien. In the letter Mr. Moser stated **"[t]his office represented the Plaintiffs from prior to the commencement of the action on November 17, 2020 until on or about February 15, 2022."** Docket Entry 153. Moser has conceded that he has not represented Plaintiffs since February 2022. In addition to the outright admission that he was no longer representing Plaintiffs, his assertion of a lien (which current counsel do not get) further establishes that he no longer represents Plaintiffs. Put simply, Mr. Moser had no interest in this matter whatsoever until he saw a docket entry in December 2023 that this matter was settled and that he could potentially get fees.

Following Mr. Moser's December 2023 letter, I called him multiple times in December and January 2024 to negotiate a deal on his alleged attorney's fees. These calls were not returned. Prior to filing the motion for settlement approval, I again reached out to Mr. Moser and requested: (1) a time to talk about what, if anything, he is owed on the case; and (2) to request an affidavit with his billing so his time could be included as part of our lodestar application. Mr. Moser indicated he would call back.

After a week passed without hearing from Mr. Moser, I wrote to him on July 8, 2024. I wrote, "ha[ve] not heard from you about resolving the fee issue. Our papers are due a week from today so there is some urgency to us talking." On July 10, 2024, Mr. Moser directed me to speak with his counsel, Peter Shipman, and asked, for the first time, for a copy of the Settlement Agreement, which we provided.[1] I was never asked to produce any other documentation. On July 11, 2024, I spoke with Mr. Shipman, and he and I resolved Mr. Moser's legal fee claim based on a percentage of the total fees ultimately approved by the Court. I was also promised Mr. Moser's declaration in connection with our fee application. This agreement was memorialized in an email from me to Mr. Shipman. The next day, I received a call from Mr. Shipman saying he was "embarrassed" and that he "never before had a client go back on a deal", but that Mr. Moser's new demand was over 120% more than what we had previously agreed to. Mr. Moser would not move off this request.

Instead, Mr. Moser filed his frivolous July 15th application in which he falsely claims to represent Plaintiffs. Docket Entry 166. When that failed to get Plaintiffs' counsel to capitulate to his fee demands, he filed the instant frivolous application. Docket Entry 172. Simply stated, Mr. Moser does not actually currently represent Plaintiffs, has admitted as such, and has no standing to make an application regarding the Settlement Agreement.

---

[1] While Mr. Moser now feigns interest in the propriety of the settlement agreement it is noteworthy that he never asked for a copy of the of the settlement agreement he is suddenly so concerned about until I was negotiating a fee with his attorney, despite knowing that one was in the process of being finalized. *See e.g.,* Docket Entry 158, 160, 162.

2

## THE PROPOSED SETTLEMENT IS FAIR AND SHOULD BE APPROVED

The proposed settlement agreement is the product of years of litigation (involving substantial motion practice and the exchange of vital documents including payroll data) and a lengthy period of negotiations between Plaintiffs' legitimate counsel[2] on the one hand and Corporation Counsel and Jackson Lewis (one of the pre-eminent employment law firms in the country) on the other hand. Moreover, the settlement was reached with the assistance of a Court-appointed SDNY mediator who himself specializes in employment litigation including FLSA issues. As set forth in Plaintiffs' unopposed approval motion, the proposed settlement agreement is eminently fair and a good result for all Settlement Plaintiffs. Docket Entries 168 and 169.

Notwithstanding the foregoing, Mr. Moser raises several purported issues in the hopes of creating enough chaos to prevent the approval of the settlement and to utilize such chaos to extract attorneys' fees. The alleged issues he raises need to be viewed through this prism, as well as Mr. Moser's concessions, explicit and/or implied, that he has not been counsel in this matter for years, has none of the underlying data on which the settlement is based, and has had no hand in the negotiations or resolution of this matter.

With respect to changes to the notice/consent form, each change was negotiated between Plaintiffs' counsel and Defendants' counsel (Corporation Counsel). The two changes Mr. Moser objects to are: (1) substituting in current counsel for terminated counsel; and (2) clarifying what relief was being sought by adding the words "for the unpaid/delayed payment of overtime wages and related relief[.]" There was nothing improper about the changes and, to the extent Mr. Moser had a genuine issue with them, he could have raised it in connection with any of the approximately 2,600 times the consent form was filed instead of waiting until after an approval motion was submitted years later. Docket Entries 96-132,135.

As to the settlement, there is nothing improper about its negotiation, the agreed upon terms, or the proposed approval process. There is nothing that requires the settlement agreement to be signed by all Plaintiffs. Mr. Malcolm signed it, all other Plaintiffs gave their explicit written consent to be bound by a settlement of the matter, and 16 declarations were submitted in support of it. Docket Entries 1 (p. 17-28), 9-19, 21, 96-132, 135, 168(3), p. 15. Indeed, in the 8 cases the parties cited in their July 19, 2024 joint letter brief where similar collective actions were settled with the City, **none** of the settlement agreements were signed by the Plaintiffs. Docket Entry 171, p. 2-3. Mr. Moser asserts that the declarations in support of the settlement make unsubstantiated claims, but he does not mention what any of them are and given his lack of involvement in this litigation after February 2022 one wonders how he would be able to do so. Indeed, Plaintiffs' counsel has serious doubts regarding Mr. Moser actually being in possession of the declarations since Plaintiffs' counsel was unable to file them on the docket, cannot access them via the docket entries where we attempted to file them, and same were emailed directly to the Court via an email Mr. Moser was not copied on.

---

[2] *See e.g.*, Docket Entries 63(letter from Mr. Pagano advising Court he was now prosecuting case at his own firm with Mr. Pollack and myself), 96(opt-in form authorizing current Plaintiffs' counsel to represent opt-ins), 169(3)(retainer agreements).

3

As to allegedly disguised service awards, there are none. Mr. Moser's own initial complaint sets forth a retaliation claim on behalf of Malcolm which is independent from his (and the rest of the Plaintiffs) unpaid and late paid overtime claims. *See e.g.*, Docket Entry 1, p. 11-13. The $50,000 Malcolm is receiving in connection with the resolution of that claim is fair value as set forth in the Plaintiffs' unopposed approval motion. Moreover, the lead Plaintiffs are not getting "treble damages" service awards. Each Settlement Plaintiff will be receiving a settlement sum which will be determined, in pertinent part, by dividing the total number of overtime hours they worked during the pertinent period of November 17, 2017 to December 14, 2023 (numerator) by the total number of overtime hours worked by all Settlement Plaintiffs during that pertinent period (denominator). Such a proportionate method of calculation is unquestionably proper as set forth in the approval motion. The only nuance is that for the 24 named Plaintiffs the numerator is to be multiplied by 3. The reason for this is simple. FLSA claims have a three-year statute of limitations preceding when a consent to join form is filed. The lead Plaintiffs in this case submitted their forms in November 2020 and January 2021. Docket Entries 1, 9-19, 21. This is as opposed to the opt-in Plaintiffs who did not submit consent forms until November 2022-March 2023. Docket Entries 96-132,135. Even with a tolling agreement blunting some of the impact, given the substantial gap in time between when named Plaintiffs filed their consent forms and when the opt-in Plaintiffs filed theirs, an adjustment had to be made to the formula to be fair to everyone. The three multiplier was negotiated and agreed upon by the parties to address the filing inequity. To further assure the Court, an initial version of the agreement proposed that in calculating each Settlement Plaintiff's settlement sum they would receive a point for each week they worked from the later of the period beginning 3 years before the filing of their consent to join forms or when they became an ADW, Captain, or C.O. and the earlier of December 13, 2023 (the approximate date of the settlement in principle of this matter) or when the Plaintiff stopped being an ADW, Captain or C.O. This proposal was rejected by Plaintiffs' counsel out of concern that the named Plaintiffs' much earlier filings combined with the fact that the awards were not tied to overtime hours worked by each Plaintiff would be *too favorable to the named Plaintiffs*. The multiplier was an eventual compromise.

Moreover, the precise amounts of each of the Settlement Plaintiffs' settlement sums have not been provided for two simple reasons. One, Plaintiffs' counsel are waiting on some final data from the City and two, the Court has not ruled on the amount to be provided to the claims administrator or for attorneys' fees and costs. Without such information it is impossible to provide exact sums for each Settlement Plaintiff. Yet still, far from being "disguised" Malcolm's retaliation damages and the named Plaintiffs' multipliers are disclosed in both the approval motion and in the proposed notice to the collective. *See e.g.,* Docket Entry 168 (5), p. 2.

As to the one-step approval process, the parties' joint letter brief provided why same is appropriate under *Marichal* and that same has been customarily used in this District in settling collective actions against the City. Docket Entry 171. Mr. Moser's attacks on the parties' joint letter brief are wholly unsupported by either law or fact. The parties' estimate on potential additional administrative cost is supported by the costs incurred to date, the fact that the Settlement Plaintiffs want to be bound by the settlement is based on their express written consent and outpouring of support for the settlement, the fact that some Settlement Plaintiffs who have already expressed consent to be bound by the settlement might miss out if resending notice and requiring them to consent again are required is supported by, *inter alia*, common sense that if approximately

4

2,600 people are sent another notice they may not all return it due to a change of address, confusion about having already consented, or any other number of legitimate reasons. Likewise, the parties' concerns about the settlement being fundamentally changed by fewer or more people becoming Settlement Plaintiffs is potentially deal breaking as it has the potential to provide the City with fewer releases than anticipated or dilute the current Settlement Plaintiffs' settlement sums changing the economies of scale for the parties.

## CONCLUSION

In closing, Mr. Moser is well aware that the Court can adjudicate any fee issues after settlement approval but knowing that he could never obtain the fees he seeks through a fee application he is instead attempting to exert leverage by sabotaging the entire settlement. He admits he knows nothing about the underlying evidence on which the settlement was based (as he was not counsel) but yet attempts to disrupt the approval process simply because after agreeing to his initial fee demand, we did not simply accede to his new demand that was more than double our agreement. As previously mentioned, Plaintiffs' counsel is willing to hold any attorneys' fees that are awarded in escrow until Mr. Moser's participation (if any) is adjudicated. There is no need to hold up the settlement's approval for Mr. Moser's personal agenda.

Plaintiffs' counsel is happy to have a conference with the Court and Defendants' counsel at the Court's earliest convenience to address any concerns the Court may have about the settlement.

<div style="text-align: right;">
Respectfully submitted,

*Jason Abelove*

Jason L. Abelove
</div>

cc: All Counsel of Record (VIA ECF)

5